**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Philip MORICO, Defendant-Appellant.**

**No. 669, Docket 33254.**

United States Court of Appeals Second Circuit.

Argued June 10, 1969.

Decided July 31, 1969.

Catherine G. Roraback, New Haven, Conn., for defendant-appellant.

J. Daniel Sagarin, Asst. U. S. Atty., New Haven, Conn. (Jon O. Newman, U. S. Atty., for the District of Connecticut, Hartford, Conn., and Richard P. Crane, Jr., Asst. U. S. Atty., New Haven, Conn., of counsel), for plaintiff-appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

William Philip Morico (appellant) appeals from his conviction after a jury trial for refusal to submit to induction into military service. Appellant challenges the refusal of his draft board to exempt him as a conscientious objector and its failure to specify reasons for the denial of his claim.

Appellant first requested conscientious objector status on the day he was

ordered to report for physical examination and filed the request only after he was found to be physically fit. He appeared personally before his local board on September 13, 1965, which thereafter unanimously denied his request and confirmed his I–A classification, i.e., available for induction. No findings of fact or other record of the board's reasons for the decision were made.

He appealed to the state appeals board and his board referred his file to the United States Department of Justice for investigation and recommendation in accordance with statutory procedures in effect at that time. 50 U.S.C. App. § 456(j).[1] An F. B. I. investigation was made and a resume of the investigation was furnished to appellant. A hearing was scheduled and the examiner concluded that appellant's objections to serving, and to war generally, were religiously founded and sincerely held and "recommended that the conscientious objector claim of the defendant be sustained." The Department of Justice, after reviewing the evidence, including the examiner's recommendation, disagreed and gave its opinion to the appeals board that his claim was not sincere and was not founded on religious training and belief.

The appeals board on May 11, 1967, unanimously denied appellant's conscientious objector claim and classified him I–A. After another physical examination, he was found physically fit and ordered to report on March 21, 1968, for induction. At that time he refused to take the symbolic step forward, resulting in this prosecution.

Although the court below stated "there is really no objective factual basis for finding that he is insincere in his professed beliefs," the court felt that "the rejection was based on the religiosity of his beliefs" (Appendix, 25a). In considering the highly restrictive standard of review in cases of this type—namely, that there be "no basis in fact

for the classification"—the court concluded that the board was justified in holding appellant's professed beliefs lacking in the requisite religious foundation. Some of the factors that tended to support that conclusion, relied on below, were the non-religious atmosphere in which appellant's beliefs crystallized, the proximity of this crystallization to his first notice of physical examination and the essentially political, sociological and philosophical character of the beliefs. While appellant testified to a great reliance on religion as the driving force of his beliefs at his trial, the crucial time for judging the religiosity of his claim, the court said, is the time of his conversations before the local board and appeals board. This is not challenged by the appellant. The trial judge found that, between those conversations and the trial, "at least there was a drastic change in emphasis" and that "there just seemed to be no question that the basis for [appellant's] beliefs are founded at that time on political, sociological and philosophical views and on his own personal moral code rather than by religious training and belief" (27a).

Conscientious objectors are exempted from military service by virtue of 50 U. S.C. App. § 456(j). That statute provides:

Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code.

■ Thus, to be entitled to exemption a person must have a personal conscien-

1. The procedure was eliminated by the Military Selective Service Act of 1967.

See United States v. Purvis, 403 F.2d 555, 557 fn. 4 (2d Cir. 1968).

tious opposition to war in any form and the source of his opposition must be based on religious training and belief. Essentially political, sociological or philosophical views or mere personal moral codes are not sufficient. Attempting to clarify this very difficult area, the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), stated:

> The use by Congress of the words "merely personal" seems to us to restrict the exception to a moral code which is not only personal but which is the sole basis for the registrant's belief and is in no way related to a Supreme Being. *Id.* at 186, 85 S.Ct. at 864.

Appellant's professed beliefs must, therefore, be judged against these criteria.

In his application to his local board for classification as a conscientious objector, appellant claimed exemption on the ground that he was "by religious training and belief, conscientiously opposed to participation in war in any form." He then elaborated his beliefs:

> I believe that no nation or man has the right to dictate or force any other man or nation into any type of government or ideology which is not of his own choosing. In taking such action a nation or man is violating the rights of other men, rights given by God, which can be revoked only by God.

> I further believe that a nation, by keeping an armed force and armament stockpile larger than necessary to defend its own sovereignty, is detracting from world peace as much as any aggressor, and further, such deterrent force is really no deterrent, but rather a stimulus for other nations to develop larger or equal military forces to defend themselves. Also, a nation that acts on the presumption, either officially or unofficially, that it stands for and knows the "just" and "good" over some other system or ideology is making a judgment reserved only for God.

> The United States is no more a divine, just or good state than any other state. In doctrine and by the Constitution, granted the U.S. comes closest to Christian belief as any other system so far. But in actual practice, the U.S. is not the ideal Christian state. By serving my country as a member of its military system, I would symbolically and literally be standing for and supporting its ideas and actions. I cannot in good conscience do so.

> Each man is responsible to God, and to himself and his fellow men as creations of God before he is responsible to any state. (Defendant's Exhibit 5.)

As to the source of his religious training and belief he said "My belief is a product of my general education and upbringing, and is a facet of my personality. I have been influenced by the teaching of the Catholic Church and by readings in philosophy." In another part of the form which he submitted he stated he had been a member of the Roman Catholic Church "from birth, later by choice." (Defendant's Exhibit 5.)

It is apparent, however, that the mere statement by appellant that "by religious training and belief [I am] conscientiously opposed to participation in war in any form" cannot be conclusive on whether his professed beliefs actually meet the statutory standards because all that that statement does is to repeat and partially rephrase the language of the statute itself. Although it is a factor to be considered, the real inquiry must be directed at the substance of his beliefs. These professed beliefs are to be reviewed, not on the basis of whether the Court shares his views or even whether the Court believes that they are valid, see United States v. Purvis, 403 F.2d 555, 563 (2d Cir., 1968), but simply on the basis of whether they have the proper religious foundation.

By excluding views which were "essentially political, sociological, or philosophical," Congress intended to limit exemption from military service only to those having a religious opposition to

war.[2] Appellant's convictions consist basically of the view that the maintenance of armies, even for defense of national sovereignty, and military assistance generally, inevitably lead to the violation of the right of other people to select their own form of government, which right is allegedly sacred (97a, 111a, 117a). While his beliefs do have a minimal contact with a Supreme Being, the relation is only slight and of the smallest degree. They are predominantly and, in fact, overwhelmingly political in nature. Cases of this sort are rarely clear cut, but if the word "essentially" in the statute, excluding "essentially political, sociological, or philosophical views," has any meaning whatsoever, it would bar appellant from exemption as a conscientious objector, as specified by the act. Were it otherwise, any person with a sincere political, sociological or philosophical opposition to war, having the slightest relation to a Supreme Being, would be entitled to be exempted. This was clearly not the intention of Congress when it enacted the provision and when it employed the word "essentially." No legislative history has been offered us, and we have been unable to find any, which shows otherwise. It is, therefore, apparent that appellant was not entitled to an exemption as a conscientious objector.

Appellant's next contention is, in substance, that the combination of restrictive review, 50 U.S.C. App. § 460(b) (3), and the exemption of Selective Service boards from having to make written findings, 50 U.S.C. App. § 463(b), works to deprive him of due process of law because the failure of the draft boards to specify the bases for their action, involving his claim for conscientious objector status, denies him for all practical purposes his right to judicial review. To correct the asserted "constitutional" problems, appellant suggest a number of "solutions"—namely, to authorize the district court to determine his claim for conscientious objector status *de novo*, or to submit the question of whether the denial of his claim was proper to the jury, or to require draft boards to make written findings in cases involving claims for conscientious objector exemptions.

With respect to the claim that the trial court should have considered his claim for exemption from military service as a conscientious objector *de novo*, this argument has been rejected by the Supreme Court where it stated in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955):

> [I]t is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953). 348 U.S. at 380–381, 75 S.Ct. at 395.

As to submitting the question of whether the denial of his claim was proper to the jury, the Supreme Court in Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947), stated:

> Whether there was "no basis in fact" for the classification is not a question to be determined by the jury on an independent consideration of the evidence. The concept of a jury passing independently on an issue previously determined by an administrative body or reviewing the action of an administrative body is contrary to settled federal administrative practice; the constitutional right to a jury trial does not include the right to have a jury pass on the validity of an administrative order. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). 332 U.S. at 452–453, 68 S.Ct. at 120.

Appellant's last contention that the draft boards should be required to make written findings in conscientious objector cases has been rejected by Congress

---

2. The appellant does not challenge the constitutional validity of this provisoin and we do not reach it here.

when it exempted such boards from the Administrative Procedure Act. 50 U.S. C. App. § 463(b).

Judge Zampano below recognized that it is frequently difficult in cases of this type for a registrant, and a court, to determine why a claim is denied because there is no formal record. As he stated, "I think it would be appropriate, let me say, and helpful" if the court was not just "given the entire record, and in effect [told] you go through it to see what we [the draft boards] were thinking and justify our position, if you can" (22a). But Judge Zampano did not believe that this contention had "Constitutional or due process dimensions" (although it was not without merit), especially because copies of all the relevant documents were given to the appellant, or were at his disposal, sufficiently in advance of a determination to permit a response by him if a response was warranted. He in fact did write a response to what the Department of Justice recommended which was considered by the state appeals board.

■ Because the draft system directly affects personal liberty, the appellant must have a right to have his classification judicially reviewed at some point. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Judicial review of draft classifications, as noted above, however, is more limited than judicial review of administrative action generally. As the Supreme Court stated in Estep:

> The provision making the decisions of the local boards "final" means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no

basis in fact for the classification which it gave to the registrant. 327 U.S. at 122–123, 66 S.Ct. at 427.

■ Appellant does not challenge the constitutional validity of restrictive review, which has been codified by statute, or the need for such limited review. He does, however, argue that, in the absence of a formal record here and written findings which disclose the rationale of the board, his right to have his classification reviewed amounts to a fiction. While the right to have a court review the action of a board is so restricted, review must be meaningful. Gonzales v. United States, 348 U.S. 407, 415, 75 S. Ct. 409, 99 L.Ed. 467 (1955). It must be meaningful in the sense that it must encompass a record from which a court can determine whether there was a basis in fact for decision, what that basis was and whether the board applied the correct legal standard. See United States v. Seeger, *supra*. All these requirements have been met here.

There was sufficient evidence in the file for appellant to determine the basis for the denial of his claim for conscientious objector status both on the local board level and on the appeal board level. The chairman of the state appeals board testified at trial that appellant's entire file, in addition to the minutes of the local board's proceedings and the recommendation of the Department of Justice, all of which were available to appellant, comprised the basis for the appeal board's denial of his request for conscientious objector status. Although the boards are not required to make written findings, in effect appellant had at his disposal the reasons and bases for the boards' denial of his claim.

■ As to the application of the proper legal standard, the then chairman of the local board testified quite extensively at trial on this issue. In fact, the trial judge permitted appellant's attorney great latitude in questioning him. A reading of that transcript makes it absolutely clear that the proper legal standard was applied by the local board.

The same is apparent from the testimony of the chairman of the state appeals board. Any claim to the contrary that the wrong standard was applied by either board or that the appeals board did not consider appellant's request *de novo*, as was permitted by the applicable statute in effect at that time, is unsupported by the evidence. Therefore, appellant has not been denied due process of law by the combination of the limited scope of review and the exemption of the local board and the appeals board from making written findings.

We have considered the other claims raised by appellant, including the contention that his induction notice was void because it was signed by the clerk of the board rather than by the board itself, and find that they are without merit.

Judgment affirmed.