**UNITED STATES of America,**
**Appellee,**

v.

**John Douglas BROYLES, Appellant.**

**No. 13154.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1970.

Decided March 19, 1970.

Barry T. Winston, Chapel Hill, N. C., for appellant.

W. Arnold Smith, Asst. U. S. Atty. (Warren H. Coolidge, U. S. Atty., on the brief), for appellee.

Daniel H. Pollitt, Chapel Hill, N. C. (Charles E. Lambeth, Jr., Thomasville, N. C., James Mattocks, High Point, N. C., and Norman B. Smith, Greensboro, N. C., on the brief), for North Carolina Civil Liberties Union as amicus curiae.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Persisting in the claim, rejected by his local board, that he is a conscientious objector, John Douglas Broyles refused to submit to induction into the armed forces. He was indicted, tried and convicted for violating 50 U.S.C.A. App. § 462(c) and committed under the Federal Youth Corrections Act. He appeals, and we reverse.

I

Broyles, the twenty-five year old son of a retired Army officer, first registered under the Selective Service Act on December 14, 1963, when he was nineteen years of age. To the conscientious objector portion of the questionnaire, he responded, "Does not apply."

Broyles was granted a series of student deferments from February 11, 1964, through August 11, 1966. During this period he studied at Duke University, from which he received an A. B. degree. After graduation, Broyles volunteered for and was accepted for service in Volunteers in Service to America (VISTA), and he requested an occupational deferment (II-A) for the period June 30, 1966, to August 15, 1967.

On August 11, 1966, Broyles was reclassified I-A. He immediately wrote to his local board indicating that he had completed his VISTA training in Atlanta and had been assigned and sent to Chicago. He advised that he wished to appeal the denial of his request for an occupational deferment.

On September 8, 1966, the local board forwarded Broyles' file to the appeal board and the following January the appeal board voted unanimously to retain Broyles' classification of I-A. Broyles was notified of this action by written notice mailed January 27, 1967.

By letter dated May 1, 1967, Broyles requested Form No. 150—the special form for claiming classification as a conscientious objector. This was furnished, completed and returned promptly. On May 16, 1967, the board voted unanimously to reject the claim of conscientious objection and continue the I-A classification. Broyles was notified of this action and advised of his right to personal appearance and appeal. On May 25, 1967, he was ordered to report for a physical examination. Before the physical examination was conducted, Broyles asserted his privilege of personal appearance and stated that if not classified as a conscientious objector he wished to exercise his right to appeal. Enclosed with the letter setting forth these statements, Broyles furnished letters from four individuals in support of his claim of conscientious objection.

Broyles' physical examination was conducted July 21, 1967, and he was found acceptable. On August 22, 1967, the local board was advised that Broyles' VISTA service had been concluded.

On November 14, 1967, Broyles appeared before the local board. Prior to his appearance he was requested to furnish a written statement of what he expected to tell the board when he appeared. Broyles responded by a series of inquiries why the board felt his claim was insufficient, what additional information the board might desire, and what previous information the board would like to have clarified. No transcript of the appearance or detailed summary of what occurred was made, but the board recorded, "[t]here was nothing new brought out during the personal appearance other than that the registrant wanted the board to answer questions, and they advised him that they would not answer questions that he requested." On the same day, the board voted unanimously to continue Broyles' classification as I-A.

Advised of this action, Broyles took a second unsuccessful appeal. In April and May, Broyles wrote to his local board reasserting his conscientious objection. In the April letter, he stated his willingness to serve in the medical corps in Vietnam or in a hospital or school in the United States. In his May letter, he articulated his inability to understand the denial of I–O classification. He respectfully asked his board to reexamine the material which he had submitted and to consider the restatement of his beliefs set forth in the letter. He also included a letter of support from his father. Finally, he requested the local board to seek review from the Presidential Appeal Board in his behalf. The board declined to reopen the matter, and on May 2, 1968, Broyles was ordered to report for induction on May 31, 1968. He appeared at the induction center, but refused to be inducted and filed a written statement of his refusal.

## II

Broyles makes numerous arguments why his conviction should be reversed. On the initial consideration of his appeal by a panel of this Court, it appeared that neither the local board, the appeal board, nor anyone else ever stated why Broyles' claim of conscientious objection was denied. We requested the filing of supplemental briefs and ordered the case reargued on the question of under what circumstances and to what extent should a local selective service board be required to articulate its reason for denying a registrant's request to be classified as a conscientious objector. It is that issue which we find dispositive of this case.

## III

■ The record shows that Broyles established *prima facie* his entitlement to classification as a conscientious objector.

His conscientious objector's questionnaire recites that he is not presently a member of any organized religious group, although he received his early religious training in the Episcopal Church and has had associations with the Unitarian Church. One of the letters in support of his claim also shows that he has had contacts with The United Church of Christ-Friends.

In describing his religious beliefs, Broyles states that he believes in a "Life Force," which is "supreme," and which constitutes the "basic driving energy of the universe." This Life Force directs Broyles' conscience and "there are often commands which outweigh the duties arising from a human relationship." The essence of his claim is described in the following language:

"Because I see the Life Force as the ultimate and supreme force of the universe and human life is sacred, and because I must follow the dictates of my conscience, I find killing and war utterly negative, sinful and wrong. For the same reason I would find it impossible to serve in the capacity of a medical soldier whose basic objective was to fix up a man so he could go quickly and kill again. Also, I could not obey an order to treat a man less seriously wounded before a man who was almost dying. If I were to patch up a soldier, it would have to be for his sake as a human being and not for the sake of further killing and more fighting."

In addition to the formal religious contacts, Broyles stated that his beliefs were derived from his parents and his own religious readings. He said that, although his father was a professional Army officer, he taught him great respect for human life and his mother instilled the qualities of compassion and tolerance. Beginning in high school and continuing through college, he had read and been influenced by books on Eastern philosophy and Eastern religion and books of certain twentieth century theologians, including Tillich, Niebuhr and de Chardin. As an example of his practice of his beliefs in the sanctity and goodness of human life, Broyles cited his work with the Congress of Racial Equality

in 1964, as well as his association with VISTA. He said that his beliefs and the conclusions drawn from work with his fellow men crystallized into his position of conscientious objection and that, in the spring of 1967, he first heard that under existing law he might be entitled to classification as a conscientious objector. These factors and the immediate threat of the draft led him to make formal application for classification as a conscientious objector.

In response to the question of what circumstances did he believe warranted the use of force, he replied that except in defense of himself or loved ones he would not resort to force. In an elaborate answer, he concluded that his beliefs concerning the use of force would not permit him to serve in the armed forces.

Impressive backing for Broyles' claims is contained in the letters filed in support of the statements contained in his conscientious objector questionnaire. In one, a retired Army officer who had known him for over twenty years wrote that he disagreed "completely and vehemently" with Broyles' stand but that there was "no question in my mind as to the sincerity or honesty" of the claim. He added that Broyles' stand "is consistent with his life, action and thought" and that "[h]is religious training and beliefs apparently have been synthesizing for him particularly during the past 8 years," and that Broyles' belief "to him * * * has the same weight as more orthodox religious convictions."

In another letter, a college president who had known Broyles for over ten years wrote, "I am certain that his stand on military service results from his religious training and belief," that as a child Broyles was not pugnacious or belligerent and that Broyles sincerely held beliefs closely akin to Unitarian doctrine.

By this evidence, Broyles showed *prima facie* that he was conscientiously opposed to participation in war in any form, and that these views resulted from his religious training and belief and not from essentially political, sociological or philosophical views or a merely personal code. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States v. James, 417 F.2d 826 (4 Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4 Cir. 1969), rehearing den., 412 F.2d 1137; Lockhart v. United States, 420 F.2d 1143 (9 Cir. 1968).

### IV

When a *prima facie* case of conscientious objection has been established, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), tells us the grounds on which it may be overcome. In *Witmer*, a case where a Jehovah's Witness claimed a conscientious objection classification, the Court contrasted the issue and the nature of the proof to provide a "basis in fact" to reject it, with the issue and nature of the proof to deny a claim of ministerial classification considered in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). In *Witmer*, it said:

> "the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in *Dickinson*, the evidence providing 'basis in fact' must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith." 348 U.S. 382, 75 S.Ct. 396.

The Court then indicated that the *prima facie* sincerity and good faith belief could be overcome by an adverse conclusion as to a registrant's credibility or objective evidence, such as lateness of his claim, inconsistent prior acts, etc., to cast doubt on his sincerity or to establish bad faith.

We are, of course, bound by these principles. In numerous cases in this Court, beginning with Campbell v. United States, 221 F.2d 454 (4 Cir. 1955), we

have sustained the rejection of conscientious objector claims where the claim came late or there was evidence of prior inconsistent claims. In this case, however, Broyles asserts that his views were not earlier crystallized and that he did not assert them earlier because of ignorance of the legal definition of a conscientious objector and how to assert the claim. This case, therefore, presents subsidiary questions of credibility and sincerity, because we do not foreclose the possibility that conscientious objection may crystallize after initial registration. Even if such views were formulated earlier, a registrant may not know the legal effect of his beliefs or how to assert them. Even if he held the views, knew their legal effect and how to assert them, the stigma possibly attached to conscientious objection may have made him reluctant to claim his right until he had exhausted other possible deferments.

The decision in this case is controlled by United States v. James, *supra.* In *James* the record disclosed no objective evidence to reject the registrant's claim of conscientious objection. We recognized that the local board may have found the registrant insincere, but we held that under those circumstances effective review requires an explicit finding of insincerity if that is to be the sole basis for rejection of the conscientious objection claim. The *James* decision rested on the concept that "[w]here the local board's conclusion [a bare order of rejection without explanation] may be explainable on alternate grounds, both legally acceptable and unacceptable, the risk is too great that we would place an imprimatur on an unsupportable basis of decision." *Id.,* 417 F.2d at 832. *Cf.,* United States v. Washington, 392 F.2d 37 (6 Cir. 1968).

In *James* the claim of conscientious objection was made early and pursued consistently, but the rationale of the case can not be limited to those facts. Where there is *prima facie* an adequate explanation of lateness or of prior inconsistent activity, the credibility of the registrant is the crucial issue in deciding his claim. Where the claimant's explanation of his lateness has apparent validity, we are persuaded to apply the rule formulated in *James.*

Congress has imposed upon the courts a statutory duty to review the orders of the local boards. 50 U.S.C.A. App. § 460(b) (3). This review is limited, however, to whether there is a "basis in fact" for the classification assigned to such registrant. Where the record discloses only *prima facie* entitlement to a conscientious objector classification, we cannot discharge even this limited duty without a statement of the reasons for the board's adverse conclusion. Therefore, we must hold the local board's order invalid.

Support for this view is found in United States v. Jakobson, 325 F.2d 409 (1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). In *Jakobson* the Second Circuit reversed the conviction of an unsuccessful conscientious objection claimant where the record showed that the claim was rejected either because Jakobson was insincere or because the board misinterpreted the requirement that conscientious objection be the result of religious training and belief. The court stated that "inability to determine the grounds upon which the Appeal Board based Jakobson's classification complicates disposition of the appeal." 325 F.2d at 416. Discussing pertinent authority, it concluded "[s]ince Jakobson's classification may have rested on an erroneous ground, his conviction cannot stand." 325 F.2d at 417. The Second Circuit's disposition of the case was affirmed in *Seeger, supra.* The Supreme Court acknowledged the dilemma of the Court of Appeals (380 U.S. at 168, 85 S.Ct. 850) but did not discuss that issue further.

In the instant case, we face the same dilemma as the *Jakobson* court. Although the local board may have found Broyles insincere, it may also have misinterpreted or misapplied the sophisti-

cated test of *Seeger* or it may erroneously have concluded that the registrant failed to establish a *prima facie* case.

Contemporaneously with *James* but then unknown to us, the Ninth Circuit, in United States v. Haughton, 413 F.2d 736 (9 Cir. 1969), arrived at a result similar to *James*. In *Haughton* the conviction of a conscientious objector for refusing to submit to induction was reversed. In stating the principles which governed decision, the Court said:

"Inconsistent statements or actions or a finding of insincerity may support the denial of conscientious objector status. Parrott v. United States, [9 Cir., 370 F.2d 388] *supra; see* Witmer v. United States, [348 U.S.] at 382, 75 S.Ct. 392. The local board, however, must state the reasons for it's denial of a requested classification when a registrant has 'met the statutory criteria' (*Parrott, supra,* [370 F.2d] at 388) for that classification or, in the language of *Dickinson,* has placed himself 'prima facie within the statutory exemption.' 346 U.S. at 397, 74 S.Ct. at 158. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969). Otherwise a court cannot determine whether a board's denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classification, or on the reasonable disbelief of certain allegations necessary to the registrant's *prima facie* case. United States v. Jakobson, 325 F.2d 409, 416–417 (2d Cir. 1963), aff'd *sub nom.* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954), Batelaan v. United States, 217 F.2d 946 and note 1 (9th Cir. 1954); United States v. St. Clair, *supra,* [293 F.Supp. 337] at 344, Cf. Schuman v. United States, 208 F.2d 801, 805 (9th Cir. 1953)." *Id.,* at 739.

Then, after analyzing the registrant's claim and concluding that he had presented a *prima facie* claim, the Court concluded:

"The local board may have concluded that Haughton was insincere in his claim, or that Haughton's religious training and beliefs did not, by themselves, lead to his opposition to war. The board may have relied on information not in the record, contradicting the allegations in Haughton's form 150. Or the board may have erroneously concluded that Haughton's allegations, even if true, did not entitle him to his requested classification. Since the board has not stated the basis for its decision, we cannot determine whether Haughton was properly denied conscientious objector status. United States v. Jakobson, *supra,* aff'd *sub nom.* United States v. Seeger, *supra.*" *Id.,* at 742–743.

For the reasons advanced by the Ninth Circuit, we are persuaded that the rule in *James* should extend to cases where the basis of rejection of a claim of conscientious objection may be other than solely the registrant's credibility. In any case where the board fails to disclose the basis for its decision, we risk blind endorsement of a mistake of law. Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why.

### V

Campbell v. United States, 221 F.2d 454 (4 Cir. 1955), is urged on us, by the government, to support affirmance. Gaston v. United States, 222 F.2d 818 (4 Cir. 1955) (per curiam), is a similar case.

In *Campbell* a conviction for failure to report for induction was affirmed against the claim that the order was invalid because defendant was a conscientious objector. Campbell, an employee of an overall manufacturing company, had not claimed that he was a conscientious objector when he registered in

1952. He made the claim six months later and he prosecuted it before the local board, and the appeal board, unsuccessfully. While his administrative appeal was pending, he accepted work as a hospital orderly, but he quit this job when his I–A classification was sustained by the appeal board. After the appeal to the appeal board the procedure then prescribed by law was followed. An investigation was made by the F.B.I. and a hearing was accorded Campbell by a hearing officer of the Department of Justice, who had received the F.B.I. report and who furnished Campbell a summary thereof before the hearing. The issue investigated and considered at the hearing was, of course, the validity of Campbell's claim as a conscientious objector. The hearing officer made a report to the Department of Justice which, on the basis of his report, recommended to the appeal board that the claim be denied.

On these facts we held that there was a basis in fact for refusing the exemption, notwithstanding that neither the local board nor the appeal board stated any reason why the claim was denied. We reached this conclusion, saying, "Neither board is bound to believe a registrant's statement as to his belief, especially when, as here, conscientious objection seems not to have been thought of until military service became imminent." Campbell v. United States, *supra*, 221 F.2d at 457. We concluded that the mere fact that Campbell's selective service file contained no contradiction of his statements that he was a conscientious objector was not enough to entitle him to that classification.

So far as relevant here, *Campbell* may be considered as supporting two propositions: (a) that a board need not articulate any reason for denying a claim of conscientious objection and the Court will sustain the board if it finds any evidence in a registrant's file from which the board may have concluded that the claim was not sincere and not made in good faith, and (b) that the failure to assert the claim at the time of

original registration and consistently to maintain it is a sufficient basis for rejection of the claim. In regard to the latter, we distinguished *Campbell* and *Gaston* in *James*, footnote 7, 417 F.2d at 832, on the ground that in them there was a basis in fact for rejection of the exemption because the claim was not asserted until induction was imminent.

■ To the extent that *Campbell* and *Gaston* hold that the board need not articulate its reason for denying a claim of conscientious objection, we now modify them for the reasons stated. To the extent that *Campbell* and *Gaston* hold that inadequately explained lateness in the assertion of a claim of conscientious objection constitutes evidence which a board may consider in passing upon the validity of the claim, we leave them untouched. However, it is not now and never has been our view that lateness *as a matter of law* requires the rejection of the claim.

In addition to those previously stated, there is another reason to depart from *Campbell*. *Campbell* was a case to which the provisions of the Selective Service Act prior to its 1967 amendments were applicable. Prior to 1967 there was little need for a local board to state the reasons for an adverse decision on a claim of conscientious objection. The language in 50 U.S.C.A. App. § 456(j) required the local board's denial of the claim to be followed by an F.B.I. field investigation, and the registrant was informed of the "nature and character" of any unfavorable evidence. United States v. Nugent, 346 U.S. 1, 7, 73 S.Ct. 991, 97 L.Ed. 1417 (1953). A registrant was next entitled to a hearing before a hearing officer where he could answer and rebut the adverse data in his file. Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955). Registrants were also entitled to a copy of the recommendations by the hearing officer and a resume of the recommendations by the Department of Justice to the appeal board with an opportunity to reply thereto. Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955).

Under such a procedure, rarely would a claimant not be informed of the reasons for denial of his claim. Under existing law, if the board's nondisclosure were sustained, the litigation could only proceed in darkness.

It is argued that in revising 50 U.S. C.A. App. § 456(j) Congress gave full consideration to the reported recommendations of the President's National Advisory Commission on Selective Service, chaired by Mr. Burke Marshall, and published March 6, 1967. I U.S.Code Congressional and Administrative News, 90th Cong., First Sess. (1967) pp. 1308, 1309, 1348. It is said that this report suggested that in conscientious objector cases local boards be required to disclose the basis for a decision adverse to the registrant. This suggestion was not enacted into law, but we are referred to no legislative proceedings explaining the rejection. The argument concludes that Congress intended that a local board not be required to articulate its basis of decision.

█ Absent a complete explanation of why the Marshall suggestion was not adopted, inaction is weak evidence of legislative intent. With equal persuasiveness, it may be argued conversely that Congress did not adopt the suggestion because it was deemed superfluous. Section 10 of the Act, 50 U.S.C.A. App. § 460, grants to local boards the power "to hear and determine" all claims of exemption; it permits the establishment of administrative appeals; and it authorizes judicial review to determine if there is "no basis in fact" for the classification assigned a registrant. Implicit in the concept of a "hearing" granted by the statute, and the right, albeit limited, of judicial review is the opportunity to know the issues so that these procedures are not empty gestures. Indeed, once judicial review is granted, basic fair play requires that the parties and the

reviewing court have disclosed to them that which is to be reviewed. United States v. Nugent, *supra;* Gonzales v. United States, *supra;* United States v. Owen, 415 F.2d 383 (8 Cir. 1969); Brewer v. United States, 211 F.2d 864 (4 Cir. 1954). We are unpersuaded by the argument of negative legislative intent and conclude that the Act requires the result we have reached.

Because Broyles' local board did not disclose why his claim to a conscientious objector classification was denied, its classification of him as I–A was invalid, as was the order to report. The conviction for failure to report cannot stand.

Reversed.

BOREMAN, Circuit Judge (dissenting):

Under the Military Selective Service Act of 1967, decisions of local Selective Service boards are to be considered "final" except where an appeal is authorized. 50 U.S.C., App. § 460(b) (3).[1] However, in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), the Supreme Court held that while courts are not to weigh evidence to determine the correctness of a classification, they must examine the record to see that there is a *basis in fact* for the classification which a board has given a registrant. The Court admonished that " * * * [t]he question of jurisdiction of the local board is reached *only if there is no basis in fact for the classification which it gave the registrant.*" Id. at 122, 66 S.Ct. at 427. (Emphasis added.) In Dickinson v. United States, 346 U.S. 389, 396, 74 S. Ct. 152, 98 L.Ed. 132 (1953), the Court established that an appellate court in reviewing a local board's denial of a particular classification is to:

" * * * search the record for some affirmative evidence to support the local board's overt or *implicit* finding

---

1. In 1967, the "Universal Military Training and Service Act" became the "Military Selective Service Act of 1967." The Acts are quite similar, and the same cita- tions were used. The language of § 460 (b) (3) which declares that decisions of local boards are to be considered "final" is identical in both Acts.

that a registrant has not painted a complete or accurate picture. [Emphasis added.]

\* \* \* \* \* \*

" \* \* \* [T]he courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption."

There is sufficient evidence to persuade me that there was a basis in fact in Broyles' Selective Service file to sustain the local board's denial of his conscientious objector claim. When Broyles submitted his special form for conscientious objector, he frankly stated:

"A combination of things came together this Spring (1967) which made me ask for form #150 and made me fill it out. Talking to a lot of people, many already conscientious objectors, led me to believe I *might* be a conscientious objector myself. After reading the 'Handbook for Conscientious Objectors' which I got from the American Friends Service Committee, I realized thay [sic] by law, I would *probably* be classified as a conscientious objector. *These things coupled with the fact that I was A–I and could be drafted any day unless I acted, led me to make application for form #150, and to fill it out.*" (Emphasis added.)

This candid admission by Broyles that he filed his conscientious objector claim because he could be "drafted any day unless I acted" coupled with the facts that Broyles' first Selective Service classification questionnaire specifically rejected any claim that he was a conscientious objector, that he held student deferments for some three years, and that immediately upon losing the protection of his student deferment he twice requested an occupational deferment led me to the inescapable conclusion that Broyles simply did not intend to serve in the armed forces if he could avoid it. His every move indicates a determination to escape military service. These factors provided a sufficient basis in fact for the board's denial of his conscientious objector

claim, as is required by *Estep*. These same factors comply with the requirements of *Dickinson*, as they "support the local board's overt or implicit finding that the registrant has not painted a complete or accurate picture" and is "proof that is incompatible with the registrant's proof of exemption." These factors also provide support for an "inference of insincerity or bad faith," as is required by Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955). Upon finding a basis in fact for the board's action, our inquiry should have ended, for, as the Court stated in Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 92 L.Ed. 59 (1947), " \* \* \* [W]hen a court finds a basis in the file for the board's action that action is conclusive." Courts have admonished that "It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies." Witmer v. United States, 348 U.S. 375, 380, 75 S.Ct. 392, 395 (1955), *supra;* United States v. Hill, 221 F.2d 437, 440 (7 Cir. 1955). In overturning Broyles' conviction, as the majority does, in the face of a substantial basis in fact in the record supporting the board's action we have indeed assumed the role of a "super draft board," substituting our evaluation of the evidence for that of the local board.

The majority says that the decision in this case is controlled by the prior decision of this court in United States v. James, 417 F.2d 826 (4 Cir. 1969), but that case is clearly distinguishable on its facts. In *James*, the registrant was a Jehovah's Witness who, from the very beginning, consistently and unwaveringly claimed that he was a conscientious objector and there was absolutely nothing in his Selective Service file to contradict his claim or to disclose a basis in fact for denying it. Accordingly, this court held that it was the duty of the local board to record in the registrant's file the reasons for denying the claimed classification.

The majority concludes that Broyles made out a prima facie case merely by filing his special form for conscientious objector classification along with supporting letters from family and friends. I cannot agree. In my view a registrant makes out a prima facie case by filing such claim, with letters of support, only when there is nothing appearing in his file which tends to contradict his claim or to indicate his insincerity in asserting such claim. In the instant case Broyles' own statements contained in the form asserting his claim for conscientious objector classification and other disclosures in the file provide support for the inference of insincerity and a desperate, last-minute effort to avoid induction. Certainly it cannot be the view of the majority that a local board must rely only upon what occurs subsequent to the assertion of the claim to exemption to find a basis for contradiction. Under the majority's view of "prima facie case," any registrant could make out such a case simply by filing a claim with supporting letters and thus place the local board in the position where it must produce affirmative evidence to disprove the registrant's claim. If that were the case the burden of proof would be transferred to the board to affirmatively disprove a registrant's subjective belief which would appear, at face, to be virtually an impossible task. Selective Service law is clear that if a registrant is to be exempt from military service he must *prove* that he is entitled to an exemption. Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152 (1953), *supra*; United States v. Washington, 392 F.2d 37, 39 (6 Cir. 1968).

In reversing Broyles' conviction the majority proposes to overrule, only in part, this court's decision in Campbell v. United States, 221 F.2d 454 (4 Cir. 1955). The majority states:

"To the extent that *Campbell* and *Gaston* [Gaston v. United States, 222 F.2d 818 (4 Cir. 1955) (per curiam)] hold that inadequately explained lateness in the assertion of a claim of conscientious objection constitutes evidence which a board may consider in passing upon the validity of the claim, we leave them untouched. However, it is not now and never has been our view that lateness *as a matter of law* requires the rejection of the claim."

But a careful examination of the record in *Campbell* convinces me that the court there based its decision on the last-minute assertion of the claimed exemption.[2] In *Campbell*, in quoting from United States v. Simmons, 213 F.2d 901, 904 (7 Cir. 1954), this court said:

"When the record discloses any evidence *of whatever nature* which is incompatible with the claim of exemption we may not inquire further as to the correctness of the board's order." (Emphasis added.) 221 F.2d 454, 457–458.

I respectfully submit that the majority, despite its disavowal, is overruling *Campbell* and I would prefer that this be done explicitly and forthrightly, without any attempt to leave a spark of life in a devitalized carcass.

The majority assigns as one reason for its decision that "[p]rior to 1967 there was little need for a local board to state the reasons for an adverse decision on a claim of conscientious ob-

---

2. In *Campbell* the file showed that the registrant was an active, hardworking member of the Church of the Brethren, an antiwar church; that he submitted thirteen letters attesting to his sincerity. The only other possible bases in fact for the denial of his conscientious objector claim were that he, upon occasions, used profane language and that he had quit one job to take a hospital job while at the same time asking his local board for a I-O

classification because he was then performing work similar to that to which he would be assigned if granted the desired classification. These factors would not tend in the slightest degree to disprove the sincerity of his claim, and the only reasonable conclusion to be drawn is that the board, in denying Campbell's request for conscientious objector's classification, relied exclusively upon lateness in the assertion of the claim.

jection" since, by statute, the FBI was required to conduct an investigation and inform a registrant of the "nature and character" of unfavorable evidence after the local board had denied his claim. The majority reasons that " * * * rarely would a claimant not be informed of the reasons for denial of his claim," whereas under present law there is no such opportunity for disclosure. However, in my view, the old procedure would not have served to alleviate what appears to be the majority's present primary concern, namely, that a local board's failure to state its reasons for denial of a conscientious objector claim forecloses effective judicial review because the reviewing court is not informed of the precise grounds upon which the local board relied.

Under the old procedure the FBI report was made available to a hearing officer of the Department of Justice who then accorded the registrant a hearing after the latter had been provided with a summary of the FBI report. The hearing officer submitted his recommendation to the Justice Department which, in turn, made a recommendation to the appeal board as to disposition of the appeal. In sustaining the local board's classification the appeal board used a form which merely reassigned the same classification to the registrant without disclosing its reasons for affirmance. Thus, the registrant may have obtained information as to adverse evidence in the FBI report but there was no method provided by which the reviewing court could determine whether the local board and the appeal board disbelieved the registrant, or felt that he did not fall within the definition of conscientious objector, or precisely why the claim was denied. The mere fact that, under the old procedure, the registrant obtained information which was not reflected in the board's decision or assigned as a basis for its action would provide no assistance whatever to the court in discharging its duty to review.

The majority proposes a result in a case such as this which is neither desirable nor intended by statute. Therefore, I must respectfully dissent.

ALBERT V. BRYAN, Circuit Judge (dissenting):

The majority's decision, at bottom, overturns appellant's conviction exclusively on the failure of the Selective Service Board to state reasons for denying the registrant a conscientious objector classification. Yet this bald premise of decision is nowhere found in the Selective Service Act or regulations. See United States v. Curry, 410 F.2d 1297, 1299 (1 Cir. 1969). Nor can it rest on the assertion of "basic fair play". See United States v. Morico, 415 F.2d 138, 143 (2 Cir. 1969), petition for cert. filed Sept. 29, 1969, Dkt. No. 672, 38 USLW 3224.

Nevertheless, a statement of reasons is made the indispensable cornerstone of every Board rejection of a CO classification, once a prima facie claim has been established. The Court holds that without an announcement of the reasons for denial, an order to report cannot stand. The majority goes so far as to say that the Board must state "whether it has found the registrant incredible, or insincere, or of bad faith, and *why*." (Accent added.)

The rationale advanced for the exaction from the Board is that without it the right of judicial review preserved by the Act is not possible. This conclusion, it seems to me, flows from the failure to recognize the separation and distinction between the respective functions of Board and court. Here, the majority, in disregarding the difference, disjoints the adjudication of a CO claim.

The function of the Board is to *make* the classification. Once it has done so, the Board's responsibility is at an end. It has played its part, starkly or embellished with reasons, n'importe. Then, and not before, judicial review enters.

I recognize that the scope of this review is narrow. The statutory duty of the court is to ascertain if "there is no basis in fact for the classification". 50

U.S.C. App. § 460(b) (3). But, necessarily, even this limited review contemplates a canvass of the entire record.

If the Board does not articulate reasons, the efficacy of the judicial decision is not affected a tittle. Similarly, if reasons are expressed, the duty of the court is not thereby discharged. While a recitation of reasons might be helpful to the court, the absence or presence does not conclude the judicial consideration. The court must police all the areas of contention which were before the Board. Should the Board state its reasons, they would not conclusively prescribe the precinct or beat of judicial review. So much appears to have been recognized by the Supreme Court in Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

Despite these irrefutable propositions, the majority still insists that in conscientious objector claims the statutory grant of review is meaningless without knowledge of the Board's reasons. The Court urges that they are needed, as already noted, to insure "basic fair play". For support, the majority cites decisions under the former procedure of referring these claims to the Department of Justice for investigation and recommendation. This procedure, concededly, was condemned for its elements of non-disclosure, in *Nugent, Simmons* and *Gonzales,* cited by the majority. But in 1967 Congress deleted this step and thereby muted these decisions.

The House Committee on Armed Services said of the omission: "Registrants claiming conscientious objection will therefore be awarded the *same* appeal procedures and administrative remedies that are available to all other registrants." 1 U.S.Code Congressional & Administrative News, 90th Cong., 1st Sess., at 1348 (1967). (Accent added.)

This explication by the Committee, later in effect adopted by Congress, stresses the element of fair play, for it subjects the registrants, including the CO applicants, to identical processing. The procedures and remedies which apply to every registrant demand, among other things, that he keep the Board informed of any fact which may affect his status. 32 CFR 1625.1(b). Moreover, while the registrant has a right to a personal appearance before the Board, he must place in writing the information he wants considered, or if orally presented, he must submit a written summary of such information to the Board for inclusion in his file. 32 CFR 1624.2(b). The registrant also has the further opportunity to supplement his file on administrative appeal. 32 CFR 1626.12. Even at this stage, he may rebut any adverse evidence, for this appeal is actually a de novo determination. 32 CFR 1626.26. See Ayers v. United States, 240 F.2d 802, 809 (9 Cir. 1956), cert. denied 352 U.S. 1016, 77 S.Ct. 563, 1 L.Ed.2d 548 (1957). Thus *all* information of the registrant's claim may be laid by him before the Board. In view of this comprehensive pattern of uninhibited rights and privileges, I think that "basic fair play" is not denied merely because a conscientious objector applicant is not furnished with a statement of the Board's reasons for its decision.

If the rule were as the majority would have it, then the Board would be a partisan, obligated to "make the case" against the registrant if its determination were unacceptable to him. It would force the Board and registrant into adversary roles. Such a posture, condemned by inference in the *Nugent, Simmons* and *Gonzales* cases, is interdicted by the philosophy and cast of the present Act. The registrant is the advocate with the burden of establishing the foundation of classification. The consideration of divorcing the Board from the controversy may well have been a factor prompting Congress not to call the Board to account for its decision.

Practical considerations were also probably weighed. The reviewing courts would be flooded with litigation upon the reasoning of the Board's reasons. Their meaning, their relevancy and a myriad of other interrogations would become issues. The Selective Service Sys-

tem would become a Serbonian bog defeating its need for speed.

Moreover, this discussion of the motive for inaction is not without legislative history. At the time of the deliberations upon the 1967 amendments, various sources had offered proposals for the requirement of a written statement by the Local Board or Appeal Board of its reasons for refusal of a claimed classification. See, e. g., National Advisory Commission on Selective Service, In Pursuit of Equity: Who Serves When Not All Serve? (1967) [commonly called the Marshall Commission Report]; Hearings on the Review of the Administration and Operation of the Selective Service System Before the House Armed Services Committee, 89th Cong., 2d Sess., at 9922 (1966). Nonetheless, Congress refused to favor these suggestions.

With these considerations in mind, I cannot join in the opinion of the Court.