**Judson BROWN**

v.

**Melvin LAIRD, Secretary of Defense, et al.**

**Civ. A. No. 71–1286.**

United States District Court,
E. D. Pennsylvania.

July 8, 1971.

Alan M. Lerner, Philadelphia, Pa., for petitioner.

J. Clayton Undercofler, III, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM AND ORDER

VANARTSDALEN, District Judge.

The petitioner, Judson Brown, filed a petition for a writ of habeas corpus, seeking (1) discharge from the Army Reserves; and (2) an injunction against an order directing him to report for active duty training.

For several months prior to January, 1970, petitioner made strenuous efforts to enlist in a specialized reserve unit, the 416th Civil Affairs Company, U.S. A.R.C., 1020 Sandy Street, Norristown, Pennsylvania 19401. He was finally accepted and on January 25, 1970, he was enlisted in that unit. Approximately two months later, on March 31, 1970, petitioner sought a discharge as a conscientious objector. The application was forwarded to the Department of the Army, Fort Benjamin Harrison, Indianapolis, Indiana 46249. On May 8, 1971, petitioner was notified that his application for discharge was "disapproved." The present petition was filed on May 25, 1971 together with a motion for both a temporary restraining order and a preliminary injunction seeking to prevent the Army from directing petitioner to report for active duty training.

The hearing on the motion for a temporary restraining order was held on May 27, 1971. As of that date, petitioner had not been ordered to report for active duty training, and the preliminary relief sought was denied as being premature. Thereafter, petitioner was directed to report for active duty training at Fort Jackson, South Carolina, by June 3, 1971. A renewed application for a temporary restraining order was made and hearing was fixed for June 2, 1971. Solely because the full service record file relating to petitioner's application for discharge was not then available in court, and because irreparable harm would be caused if petitioner was improperly required to report for active duty training outside of this District, a temporary restraining order was entered, and hearing fixed for June 14, 1971.

At the hearing on June 14th the government presented in evidence the entire file concerning petitioner's application for discharge. Petitioner offered no evidence although afforded an opportunity so to do. Instead, petitioner's counsel argued extensively his contention that the record was deficient in that it failed to disclose any basis in fact for the rejection of petitioner's application.

During the June 14th hearing, petitioner's counsel made what would appear to be an oral application that the Court require the government to produce Lieutenant Colonel Seely (applicant's unit commander), and Major Leedom (the hearing officer) for cross-examination concerning the reasons why they found applicant to be insincere. Alternatively, petitioner's counsel requested these officers be produced for deposition. Petitioner had made no attempt to subpoena those officers as witnesses, nor had he made formal application that they be produced at the hearing. Aside from these technical deficiencies in petitioner's motion, this Court's review is limited to the record itself; and, therefore, interrogation of either of the members of the conscientious objector review board, or any other persons whose reports, recommendations and opinions are required by Army Regulations to be included in the file and considered by the Board would be impermissible. In Clay v. United States, 397 F.2d 901, 915 (5th Cir. 1968), reversed on other grounds, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), the court stated that "It would have been grossly improper [for the district court] to place the members of the Presidential Appeal Board and the Texas Appeal Board on the witness stand to determine from them what their reasons were for the selective service classification which they gave to appellant * * *." The district court was deemed to have acted properly by

quashing the subpoenas issued for the board members. I find no logical distinction between that case and the present situation.

■■ In selective service classification cases the scope of review is limited to a review of the record to ascertain if there was "a basis in fact" for the board's determination. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). The same tests are to be applied when a member of the Armed Forces seeks discharge as a conscientious objector by a writ of habeas corpus. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (decided March 8, 1971); United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); Ex Parte Stanziale, 138 F.2d 312 (3rd Cir. 1943), cert. denied, Stanziale v. Paullin, 320 U.S. 797, 64 S.Ct. 267, 88 L.Ed. 481 (1943).

The "basis in fact" test forbids the Court from sitting as a super draft board and reviewing and re-weighing the evidence, or rejudging its substantiality. Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Landau v. Allen, 424 F.2d 668, 671 (6th Cir. 1970); United States v. Griffin, 324 F.Supp. 545 (E.D.Pa. 1971).

■ If a prima facie case has been made out, "[t]he task of the courts * * * * is to search the record for some affirmative evidence to support the local board's overt or implicit finding that [applicant] has not painted a complete or accurate picture of his activities." Dickinson v. United States, *supra*, 346 U.S. at p. 396, 74 S.Ct. at p. 157. The *Dickinson* case stated that the court is not bound by the traditional rules of evidence and that the entire file may be reviewed for the purpose of ascertaining if there is some affirmative evidence to support the board's finding. *Id.*

The Court in United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970), adopted the more restrictive rule that in selective service cases where a prima facie case of conscientious objection is stated, the board must "state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why." *Id.* at 1304. This requirement was adopted by the Third Circuit in Scott v. Commanding Officer, 431 F. 2d 1132, 1137 (1970).

The record in this case clearly indicates that the board unanimously determined that the applicant did not qualify as a conscientious objector. The board found the following grounds for rejecting the application:

1. The applicant's alleged conscientious objector beliefs are not sincerely held.

2. The applicant's beliefs "are not grounded in religious training and belief (to include strongly held moral and ethical convictions)." The phrase in parenthesis was apparently inserted in recognition of the test for conscientious objector status, as laid down in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) and clarified in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), which defines "religious belief" to include situations where the opposition to war stems from the registrant's moral, ethical or religious beliefs about what is right and wrong where these beliefs are held with the strength of traditional religious convictions. *Welsh* at 340, 90 S. Ct. 1792.

3. Any objection to war in any form that applicant might truly hold was based solely on expediency. In support of this basis the board relied on AR 135–25, paragraph 5c. This ground is merely the converse of ground 2.

The board's report sets forth various reasons as to "why" it found the above grounds to be present. It found that the application "noticeably avoided the topic of conscientious objection." The sources from which applicant claimed to have received the training and acquired the belief were not directly related to his claimed religious and moral objection to war. In describing the actions and behavior in applicant's life which conspicuously demonstrated the consistency and depth of applicant's convictions, the applicant "skirted the conscientious objection issue." The application affirmatively stated that applicant had never given public expression, written or oral, to his alleged views. The Board based its decision in part upon the unit commander Lieutenant Colonel Seely's written opinion that "after numerous discussions with petitioner prior to his enlistment, and immediately thereafter" he could not agree that applicant was a conscientious objector. The board also noted the recommendation against granting the application filed by Major Harvey S. Leedom, the hearing officer and member of the Judge Advocate General's Corps, because Major Leedom concluded that the application appeared to have been based on expediency as opposed to deeply held religious moral or ethical beliefs; and because the applicant showed lack of familiarity with the authors and literary works cited in the application.

The board was charged with the duty of passing upon applicant's credibility. Since the sincerity of the applicant's beliefs depends on his subjective state of mind, determining whether one is sincere necessarily depends on the credence given to the applicant's statements. To set forth in detail the reasons for finding a person not credible as to his statements is seldom subject to precise objective findings. However, the Board did list the portions of the application which detracted from a conclusion of sincerity including the chain of command recommendations.

The most important of the chain of command recommendations was that of the interviewing officer, Major Leedom. Major Leedom personally interviewed the applicant and concluded that the claimed status was motivated by expediency rather than deeply held moral, ethical or religious beliefs. This he based on the late crystallization of the claimed beliefs; the fact that his beliefs were not concerned with any one recognized religious order or sect; that he had little knowledge concerning the authors and the writings of those cited and relied upon in the written application; that the books quoted in the application "appear" to have been recommended to the applicant and read by him; that applicant had aggressively sought and achieved membership in the Reserves (which is amply elsewhere supported in the file); that the membership in the Reserves "appears to have become onerous", and applicant wanted a discharge in order to have more time for other pursuits of his choosing. Some of these reasons are undeniably irrelevant and frivolous. The fact that the applicant's beliefs were not concerned with any religious sect or order is not harmful to the applicant as stated by the Major, but is favorable to the applicant. It is well established that an applicant's belief must be based on his own belief and not merely that of an organization of which he is a member. See United States v. Brown, 423 F.2d 751, 754 (3rd Cir. 1970). Major Leedom also stated as a reason that the books from which the applicant drew his beliefs were recommended to him. This fact on its face is irrelevant. However, it is obvious from the text of Major Leedom's recommendation that he was insinuating that the books were recommended to the applicant and read by him *solely* to artificially create and support the applicant's claim to be a conscientious objector. Under this circumstance, this factor is most relevant to the applicant's sincerity. The other reasons stated by Major Leedom in his recommendation are legal-

ly relevant bases for the Board's conclusion of insincerity.

██ The other chain of command recommendation, that of Lieutenant Colonel Seely, the commanding officer of applicant's Reserve unit, also found applicant insincere. His conclusion was based on "numerous discussions with the subject individual prior to his enlistment, and immediately thereafter." His opinion on the issue of credibility was thus also based on personal association and conversations with applicant. These two recommendations and their stated supporting grounds certainly provide the Board with a sufficient "basis in fact" for concluding that the applicant was insincere and not credible in his claim.

The military Board appears from its report to have been diligent in its efforts to evaluate Private Brown's application and in drawing its conclusions. The Board itself noted that in its determination it had "considered every aspect of Private Brown's written application; letters from interested parties presented in support of his claim, and the opinions expressed by the unit commander, interviewing Chaplain, Hearing Officer, and Military Medical Officer."

The military Board, in its role of finder of fact, determined that it did not believe the applicant was sincere, did not believe the applicant's beliefs were grounded in religious training and belief and felt that the applicant's beliefs were based solely on expediency. The reasons for this decision were set forth in sufficient detail to show that the decision had a "basis of fact." The record indicates that a fair, thorough and competent examination and determination of the applicant's claim was made. Since this court cannot weigh the evidence to determine if the Board's decision was justified, and must accept the Board's decision on the facts as final even if erroneous, my review of this case is completed.

The very recent case of Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971) would not appear to alter the scope of review available to the district court under the *Dickinson* case. In *Clay* the government conceded that two of the three possible grounds for the Appeals Board's denying Clay a conscientious objector status were erroneous. The Court then delved into the conclusions of law drawn by the Justice Department which were subsilencio adopted by the Appeals Board and concluded that, as a matter of law, these two determinations were wrong.

"Since the Appeal Board gave no reasons for its denial of the petitioner's claim, there is absolutely no way of knowing upon which of the three grounds offered in the Department's letter it relied. Yet the Government now acknowledges that two of those grounds were not valid. And, the Government's concession aside, it is indisputably clear, for the reasons stated, that the Department was simply wrong as a matter of law in advising that the petitioner's beliefs were not religiously based and were not sincerely held."

This Court does not find any of the three grounds utilized by the military Board for denying the conscientious objector status in the instant case to be wrong as a matter of law.

It is not necessary to determine whether United States v. Broyles, *supra*, and Scott v. Commanding Officer, *supra*, is applicable to a military conscientious objector discharge after a voluntary enlistment, insofar as requiring the Board to "state its basis of decision, and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith and why." *Id.* at 1137. If this requirement is binding on the military to the same extent as to draft boards, in this case that requirement has been fully met. The temporary restraining order will be dissolved.