UNITED STATES of America,
Appellee,

v.

Robert Dean DAVIS, Appellant.

No. 71–1581.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 1971.

Decided May 25, 1972.

Robert P. Dwoskin, Richmond, Va., (Dubow & Dwoskin, Richmond, Va., on brief), for appellant.

James G. Welsh, Asst. U. S. Atty. (Leigh B. Hanes, Jr., U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and FIELD, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Robert Dean Davis appeals his conviction by a jury of failing to report for and submit to induction into the armed forces. 50 U.S.C. App. § 462. We reverse.

In September of 1963, Davis entered William and Mary College in Williamsburg, Virginia, and was classified II–S (student deferment) by Local Board 29 (hereafter the board) in Berryville, Virginia. Davis held such II–S classification until June 1967 when he experienced temporary academic difficulty and was out of school pending successful completion of summer school requirements. In July of 1967, Davis filed Selective Service System Form 150, asserting that he was by reason of religious training and belief conscientiously opposed to participation in war *in any form,* and claiming exemption from both combatant and noncombatant training and service in the armed forces. The board, without assigning reasons for its action, denied Davis' claim and classified him I–A. After a personal appearance the claim was again denied and Davis appealed. However, before the appeal was acted upon, Davis returned to college, and on October 30, 1967, was classified II–S until June 1968.

On June 18, 1968, Davis was again classified I–A. He requested and was granted another personal appearance. According to a memorandum entered in his selective service file by the chairman of the board, Davis, at his appearance on July 16, 1968, stated that he would protect the United States in time of war on home ground. His I–A classification was affirmed and Davis again appealed. On August 20, 1968, without stating any reasons, the Appeal Board voted 3–0 to classify him I–A. Davis was then ordered to report on September 25, 1968, for induction.

Prior to his scheduled induction date, Davis reported to a local board in California (where he had established a new address) and requested a transfer for delivery, pursuant to pertinent regulations. The California board ordered him to report to the Oakland Induction Center on November 20, 1968. Davis reported at that time but refused induction. He was subsequently indicted for refusal to submit to induction in violation of 50 U.S.C. App. § 462, and brought to trial in the District Court for the Northern District of California. On December 24, 1969, at the close of the evidence, District Judge Levin granted a defense motion for Judgment of Acquittal. It is clear from Judge Levin's comments to the jury in explanation of the action taken, which comments were made a part of the record in the instant case, that the basis of the court's decision to acquit Davis was the failure of the board to assign reasons for its denial of Davis' conscientious objector claim. The court, properly it would appear, felt bound by United States v. Haughton, 413 F.2d 736 (9 Cir. 1969), which requires a local board to state its reasons for denying a registrant's conscientious objector claim if such claim is sufficient prima facie to bring him within the statutory exemption.

Davis' file was subsequently returned to the board at Berryville, Virginia, on the recommendation of an Assistant United States Attorney for the Northern District of California. Davis was advised by the board that his classification would be reopened on February 17, 1970, and that if he had additional information to be considered, it should be furnished by that date. Davis submitted

no new information and the board classified him I–A, assigning as a reason that his claim for a conscientious objector exemption was "not based upon religious training and belief." A personal appearance and appeal were unsuccessful and on June 15, 1970, Davis was ordered to report for induction on July 22, 1970.

On June 17, 1970, Davis requested that his classification be reopened and that his claim be reconsidered in light of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), decided June 15, 1970. On July 7, 1970, pursuant to this request, the board reconsidered Davis' claim in light of *Welsh*, but declined to reopen his classification on its finding that Davis "does not have deeply held religious, moral or ethical beliefs against participation in *all* wars." The board emphasized the word "all," and expressly referred to Davis' personal appearance of July 16, 1968, at which he had stated that he would protect the United States in time of war on home ground. Davis failed to report as ordered on July 22, 1970. Indictment, conviction in the District Court for the Western District of Virginia, and the instant appeal followed.

■■ Davis' first contention is that his indictment and trial in the Western District of Virginia were precluded by the double jeopardy clause of the Fifth Amendment. The argument is that, "[B]ecause Davis won a directed verdict of acquittal after the taking of evidence in the first trial (held in the United States District Court for the Northern District of California on 23–24 December 1969) and since that trial concerned Davis' refusal to submit for induction because he was denied a I–O classification, the effect [of] that acquittal was to divest the Selective Service System of jurisdiction over Davis and any subsequent indictment arising out of a classification matter would violate the Double Jeopardy Clause . . . . " Recognizing that double jeopardy considerations operate only where the second prosecution is for "the same offense" as that for which the defendant was previously tried and acquitted, that the test to be applied is whether the second charge requires proof of the same facts as the first, and that here the second charge required proof of failure to report at a different place and at a different time than at first ordered,[1] Davis argues nonetheless that, "in fairness," the two acts should be treated as a single offense, *i. e.*, "a continuous refusal to behave in a manner which is demanded of a I–A registrant." Davis seeks to support this analysis by pointing to "the unique nature of the Selective Service System." The Selective Service Act, he says, "incorporates criminal sanctions into the administrative framework to a degree unmatched by any other agency." We see no merit in this argument. The scope and effect of the double jeopardy clause cannot be made to depend upon the nature of the Selective Service System.

Davis further argues that, "Even if the concept of Double Jeopardy in its general sense is not applicable because of its limitation to the same offense, the case at bar was nonetheless controlled by the December 24, 1969 acquittal because of the rule of Collateral Estoppel." To the extent hereinafter explained, we agree.

■ The principle of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1190, 25 L.Ed.2d 469 (1970). Collateral estoppel precludes relitigating specific issues once actually litigated between the parties and which were essential to and determined by a prior judg-

---

1. The charge against Davis in California was that, having reported as ordered, he refused to submit to induction. The instant case involves a conviction of failing to report for and submit to induction pursuant to a later and different order.

ment. Restatement of Judgments, §§ 68, 70 (1942). In criminal law, the principle emerges as a constitutional guarantee, an "ingredient" in the protection afforded by the double jeopardy clause of the Fifth Amendment. Ashe v. Swenson, *supra*, 397 U.S. at 445, 90 S. Ct. 1189. Where a prior judgment is involved, the court is required to determine exactly what was decided in the earlier trial, United States v. Lopez, 420 F.2d 313 (2 Cir. 1969), and the inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Ashe v. Swenson, *supra*, 397 U.S. at 444, 90 S.Ct. at 1194; *accord*, Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948); United States v. Kramer, 289 F.2d 909, 915 (2 Cir. 1961). The party seeking the protection of the principle has the burden of proving that the precise issue or question he seeks to preclude was raised and determined in the first action. 1B Moore's Federal Practice ¶ 0.408 [1], p. 954; Restatement of Judgments § 68, comment 1 at 306 (1942).

◼ Davis argues here that the judgment of acquittal entered in the district court in California amounted to a substantive determination on the merits that there was no basis in fact for his I–A classification and that this determination was binding on the trial court below. The Government's response is that the acquittal in California was grounded on the finding that the board had erred procedurally in failing to set forth its reasons for denying Davis' conscientious objector claim. We can agree with the Government that the basis of the California court's decision was in essence the procedural error by the board. Judge Levin made it very clear to the

jury that the defense motion he was granting was bottomed on the fact that "the local board, his local draft board, made no finding or gave no reason which would serve as a basis in fact for his classification as a I–A registrant."[2] But it is clear that Judge Levin's decision also had a substantive aspect. United States v. Haughton, 413 F.2d 736 (9 Cir. 1968), the authority upon which the California court relied, requires a local board to set forth reasons for denying a conscientious objector claim *only* if it can be said that the registrant has placed himself "prima facie within the statutory exemption." United States v. Haughton, *supra* at 739. The judgment of acquittal entered by the California court must therefore be accepted as a judicial determination, as a matter of substantive law,[3] that Davis had established a prima facie claim of entitlement to conscientious objector classification.

◼ To establish prima facie entitlement to conscientious objector status, it is generally required that the registrant supply sufficient information concerning his objection to war to support two conclusions of "ultimate fact": (1) that such objection is based upon "religious training and belief"; and (2) that such objection encompasses "participation in war in any form." 50 U.S.C. App. § 456(j). In the instant case we are convinced that the California court determined that Davis' claim was based upon religious training and belief. Judge Levin's comments to the jury in explaining the judgment of acquittal indicate that he expressly considered this issue:

> "[T]he question before the Court is whether or not the defendant in this case presented a valid claim for classification as a conscientious objector

---

2. Judge Levin also stated:

> I think that perhaps local boards will become aware of the fact that they must make findings that will give the Court some basis, or at least indicate some basis for determination of a classification, and this may be procedural in nature, but it is important. . . .

3. [W]hether a registrant alleges a prima facie case of entitlement to a different classification is a question of law which is not affected by resolutions of fact or exercise of judgment by the local board. Grosfeld v. Morris, 448 F.2d 1004, 1013 (4 Cir. 1971).

on religious grounds, and that is a difficult problem to determine, because generally you have moral and philosophical ideas or theories involved in these—this type of case.

"There have been many decisions of the courts distinguishing between religious grounds and moral or philosophical grounds that are presented for classification as a conscientious objector.

We note also that Davis' Selective Service Form 150 reflects a background of religious training and belief. Davis professed a belief in a Supreme Being and stated that "My belief prevents me from consciously letting any human relation come before my devotion to the preservation of human life and my reverence for the Supreme Being." He asserted that he was a member of the Methodist Church, that he had at one time been active in the Presbyterian Church, and that he had studied the teachings of the Catholic Church. He also professed to have studied Eastern and ancient religions and to have "attended seminars concerning religion and had many discussions with students and professors that all been part of my religious training." Nothing in Davis' Selective Service file tends to negate these persuasive assertions of religious training and belief as contained in his Form 150.

Nowhere in Judge Levin's comments to the jury, however, is there anything to indicate that he determined or even considered whether Davis was conscientiously opposed to participation in war in any form. There are conflicting statements in Davis' file which bear directly on

this issue. In his Form 150, Davis stated, "I cannot participate in war in any form, understanding that the objective of war is the destruction of human life." However, the file contains a memorandum by the chairman of the board that on July 16, 1968, during a personal appearance before the board, Davis stated that he would protect the United States in time of war on home ground.

It might be argued that Judge Levin impliedly found that Davis was opposed to war in any form since he found that Davis had made out a prima facie claim of entitlement to conscientious objector classification. The limited information before us as to the basis of Judge Levin's decision, however, does not permit such an implication. First, it does not appear with certainty that the California court considered anything in the Selective Service file beyond Davis' form 150 in determining that he had made out a prima facie claim,[4] or that the court was aware of the board chairman's memorandum of July 16, 1968. If the court did not consider this memorandum, it cannot be said that the issue was determined on the same evidence subsequently presented to the District Court for the Western District of Virginia. Second, in the absence of any indication whatsoever as to the California court's consideration of this point, we cannot rule out the possibility that Judge Levin may have been of the opinion that Davis was not required to demonstrate opposition to *all* wars to qualify for the statutory exemption. This was an open question at the time of Judge Levin's decision but has since been resolved by the Supreme Court. It is now clear that

---

4. In United States v. Haughton, 413 F.2d 736 (9 Cir. 1969), upon which Judge Levin relied, the court held that "*the allegations in Haughton's form 150* place him 'prima facie within the statutory exemption.'" 413 F.2d 742. (Emphasis added.) And the Assistant United States Attorney for the Northern District of California, in his letter recommending that Davis' file be returned to Local Board 29 for further processing after the California acquittal, stated:

On December 24, 1969, at the close of a jury trial, . . . Judge Gerald S. Levin granted defendant's motion for a judgment of acquittal, on the ground that defendant had presented a prima facie case for I–O classification *in his Form 150* and, under *Haughton*, the local board was obligated to record the reasons for its denial of his request. (Emphasis added.)

"selective objectors" do not meet the statutory criteria. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).[5] Under the circumstances present here we find it impossible to determine whether Davis' acquittal in the Northern District of California was based upon a finding that the record was sufficient to show Davis' opposition to participation in *war in any form*.

■ As noted above, after Davis was acquitted in California his file was returned to the board at Berryville. Subsequently, on February 17, 1970, the board reopened his classification and classified him I–A, denying his conscientious objector claim for the assigned reason that it was "not based upon religious training and belief." Davis' personal appearance and appeal following this board action were unsuccessful. In thus stating the basis of its decision, the board clearly was attempting to correct its procedural error which had led to the California acquittal under the rule as stated in United States v. Haughton, *supra*. Coincidentally, in so doing, the board at least arguably complied procedurally with the rule subsequently announced in United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970), in which this court followed *Haughton* in requiring that a local board state the basis of a rejection of a conscientious objector claim where the registrant has established a prima facie case.[6] To repeat, we are satisfied that the district court in California had previously determined that the record before it was sufficient to show that Davis' claim *was* based on religious training and belief, and that such determination was embodied in the judgment of acquittal. No new information was submitted before the board which was not before the California court, nor did the board point to any information it had previously possessed but which had not been included in the record at the California trial. The board has not explicitly and unequivocally found that Davis was insincere in his assertion of religious beliefs. We conclude that the Government was precluded by the doctrine of collateral estoppel from relying in the district court below on the board's determination that Davis' claim was "not based upon religious training and belief" to support the board's denial of his claimed conscientious objector classification.

■ Following Davis' I–A classification by the board on February 17, 1970, his personal appearance was unsuccessful, and on May 12, 1970, the Appeal Board again classified him I–A. He was then ordered, on June 15, 1970, to report for induction on July 22, 1970. On June 17, 1970, he requested that his classification be reopened and that his classification be reconsidered in light of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). *Welsh*, decided on June 15, 1970, the date of the issuance of Davis' order to report for induction, can be read as expanding the concept of "religious training and belief." On July 7, 1970, the board, pur-

5. United States v. McFadden, 309 F.Supp. 502 (N.D.Cal.1970), was decided by another judge of the Northern District of California only three weeks after Judge Levin acted in Davis' case. McFadden was a Catholic, a "selective" objector who believed the Vietnam war to be "unjust" within the meaning of the teachings of his church. Charged with refusal to submit to induction, McFadden challenged the constitutionality of the requirement that a registrant claiming conscientious objector status must demonstrate oposition to war in any form. The court dismissed the indictment, holding that the challenged requirement violated the First and Fifth Amendments. On appeal, 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 541 (1971), the judgment was vacated and remanded for reconsideration in light of Gillette v. United States, supra.

6. "Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor. . . ." United States v. Broyles, supra, 423 F.2d at 1304.

suant to Davis' request, did purport to reconsider Davis' claim in light of *Welsh,* but declined to reopen his classification. However, in refusing to reopen, the board did not rely upon its earlier determination that Davis' claim was "not based upon religious training and belief," but assigned as a reason for its action that Davis "does not have deeply held religious, moral or ethical beliefs against participation in *all* wars," emphasizing the word "all" and referring to his earlier personal appearance (July 16, 1969) at which Davis had stated that he would protect the United States in time of war on home ground. As heretofore explained, we cannot be certain that the district court in California had previously determined the "all wars" question on the basis of the entire record before it or on the registrant's Form 150 alone. Where there is such uncertainty in the record as to whether a given issue was actually determined, reconsideration of that issue in a later action between the parties is not precluded by collateral estoppel. 1B Moore's Federal Practice ¶ 0.408 [1], p. 954; Restatement of Judgments § 68, comment 1 (1942). If the board, in its denial of Davis' claim to conscientious objector classification and in classifying him as I–A, had assigned as a reason that he was not op-

posed to *all wars* the Government would not have been prevented by the doctrine of collateral estoppel from relying upon that determination. However, the board assigned Davis' nonopposition to all wars as a reason for its refusal to reopen and reconsider the I–A classification.[7]

The question remaining, then, is whether the board's assigned reason of July 7, 1970, for declining to reopen Davis' classification, *i. e.,* that he "does not have deeply held religious, moral or ethical beliefs against participation in *all* wars," is sufficient, standing alone, to support his I–A classification of February 17, 1970. The apparent problem is that Davis did not have the opportunity to administratively appeal the board's determination of July 7 since the regulations do not provide for an administrative appeal from a refusal to reopen a classification. The refusal to reopen itself seems to have been procedurally proper, *see* 32 CFR §§ 1625.- 2, 1625.4 (1971), and substantively supported by the local board chairman's memorandum of July 16, 1968. But since consideration of the board's earlier determination on February 17 that Davis' claim was not based on religious training and belief is precluded by the California acquittal, its July 7 determination must support not only its decision not

---

7. It is clear that the court below considered *both* the February 17, 1970 determination by the board that Davis' claim was not based upon religious training and belief and the July 7, 1970, determination that Davis was not opposed to *all wars,* in deciding that there was a basis in fact for his I–A classification:

THE COURT: What is the motion?

MR. DWOSKIN [defense counsel]: The motion is as a matter of law that the action of the board on the 17th of February in classifying him I–A was based upon a misreading of the law, that it based it upon a strictly religious test [which] was not the law then and certainly didn't become the law after Welsh, which will be the subject of another motion.

THE COURT: All right, the motion is overruled. I should say in overruling the motion I am taking into account that the defendant at a later

—he appealed this ruling. The appeal was denied, and at a later time he requested his file to be reopened in the light of Welsh, and the local board reviewed his file and in the light of Welsh, the broader, if not more liberal standards of Welsh, as compared to Segar [sic] [United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)], and the statute, and declined to reopen it and stated the reasons, which you are aware of, on the ground, among other things, that Mr. Davis had stated that he was willing to fight for the defense of the country on [sic] a defensive way, but not in an offensive way, something like that. That is about it.

The statement that Mr. Davis made to that effect is in the file and came with a personal interview with the draft board during 1968. It has not been denied.

to reopen but also its assignment of a I–A classification in the first instance. A registrant normally is entitled to appeal an original classification, 32 CFR § 1626.2 (1971), and to deny such an appeal is to deny due process.

Davis did administratively appeal following his I–A classification on February 17. Thus it might be contended that although at the time of this appeal the board had not yet made the determination that he did not oppose *"all* wars," the information upon which this subsequent determination was based (the board chairman's memorandum of July 16, 1968) was in his file, and that he therefore was not deprived of the opportunity to offer on appeal additional argument on the issue. *See* 32 CFR § 1626.12 (1971). However, since Davis in the California trial had won a judgment of acquittal due to the failure of the board to state the basis of its earlier denial of his conscientious objector claim, we are persuaded that when administratively appealing the I–A classification of February 17 he was entitled to expect that he need contest only those reasons already put forward by the board for its action on that date.[8] Cer-

tainly, an administrative appeal of a classification based upon the determination that he was not opposed to *"all* wars" would be substantially different from an administrative appeal from a classification based upon a determination that his conscientious objector claim was "not based on religious training or belief." Yet it was only in light of the latter that Davis ever had the opportunity to appeal. As stated in Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 413, 99 L.Ed. 467 (1955):

> "Just as the right to a hearing means the right to a meaningful hearing, [citations omitted], so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered."

 It is our conclusion that, on the facts of this case, the requirements of procedural due process were not satisfied when the board undertook to assign an additional basis for his I–A classification without providing an opportunity for an administrative appeal.

Reversed.

---

8. Davis noted his administrative appeal from the February 17 I–A classification on April 24, 1970, following an unsuccessful personal appearance before his local board. On March 19, 1970, prior to this appeal, this court had concluded in United States v. Broyles, 423 F.2d 1299, *see* n. 6, *supra*, to follow the lead of the Ninth Circuit in requiring a local board to state the basis of its decision when denying a prima facie valid conscientious objector claim. Thus *Broyles* may also have given Davis reason to believe that his administrative appeal need extend only to the board's assigned reason for denying his claim.

 *Broyles* was premised upon the need for effective *judicial* review, 423 F.2d at 1304. The board's assigned reason of July 7 for declining to reopen Davis' classification, if asserted before the oppor-

tunity for an administrative appeal had been foreclosed, would provide a stated basis for Davis' I–A classification, subject to judicial review. We note, however, that later decisions in the First, Third and Fifth Circuits imposing a requirement upon local boards similar to that in *Broyles*, have been expressly bottomed upon the need for an effective *administrative* appeal. United States v. Edwards, 450 F.2d 49 (1 Cir. 1971); United States v. Stetter, 445 F.2d 472 (5 Cir. 1971); United States v. Speicher, 439 F.2d 104 (3 Cir. 1971). In *Speicher* the court characterized the *Broyles* rule as "applied . . . as an essential aid to judicial review," 439 F.2d at 108, but concluded that the reasons behind the rule "apply *a fortiori* to administrative review by nonjudicial Appeal Boards." *Id.*