**UNITED STATES of America**

**v.**

**Mark Randall WINDSOR.**

**Crim. No. 72–40.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Nov. 20, 1972.

John J. Daley, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff.

Fred C. Isaac, Jacksonville, Fla., for defendant.

## OPINION

TJOFLAT, District Judge.

The defendant is charged with refusing to submit to induction into the Armed Services in violation of Title 50, United States Code, Appendix, Section 462 (a). He waived his right to trial by jury and was tried before the Court. His only defenses were that the procedures followed by the Selective Service System in denying his claim for conscientious objector classification were defective in the following respects: (1) the explanation given by the Local Board for denying his request for conscientious objector classification was insufficient to meet the requirement for a statement of reasons enunciated in United States v. Stetter;[1] (2) the Appeal Board, which failed to announce any reasons for its denial of his claim, is required by *Stetter* to present the same type of statement as required of the Local Board; and (3) there is no basis in fact in the record for denying his claim. The Government argues (1) there was no obligation on the part of either the Local Board or the Appeal Board to give reasons for denying his request because he failed to present a *prima facie* claim for conscientious objector classification; (2) even assuming he presented a *prima facie* claim, the reasons given by the Local Board were sufficient to comply with the requirements of *Stetter*; (3) *Stetter* does not require that the Local and Appeal Boards both give reasons, but, rather, a statement from either is sufficient; and (4) there is a basis in fact in the record for denying defendant's claim. The Court agrees with defendant that he presented a *prima facie* claim to the Board, but holds that the requirements of *Stetter* were met and finds defendant guilty.

### The Facts

Defendant first registered with his Local Board in May, 1969, while a senior in high school. He was classified I–S (H) until his graduation in June, 1969. He was reclassified I–A in January, 1970, ordered to report for physical examination in September, 1970, and notified that he was fully acceptable for military service in October, 1970. The first indication that defendant desired to be granted conscientious objector classification occurred in January, 1971, nearly one year after his last I–A classification, when he requested the Special Form for conscientious objector classification, hereinafter referred to as "Form 150". He completed and returned the form later that month. In response to the question asking him to describe the nature of his belief and why it is based on religious training, he said:

> I believe that killing is wrong for any reason and am prepared to follow this forever as long as I live. I believe if I can prevent the taking of a life, I should do so. Lived with Grandfather and was taught various beliefs. He is a Methodist Minister. Also reading of several religions and found it to be apparent.

1. 445 F.2d 472 (5th Cir. 1971).

In response to the question asking how he acquired the religious belief upon which his claim was based, he stated:

> Religious background with both Grandparents (one is a Minister) and Mother, Father, Friends. Always searching for what is not what people want to believe. Never voiced much openly in High School although not satisfied with the average feeling and beliefs. Excerpts from "Bible", Books of Eastern Religion by Alan Watts, Eric Fromm, attending Baptist, Methodist, Episcopalian churches, talking with people from other churches. Brothers and sister, mother and D. Carr, J. Folsom and greatly by P. McCullers.

In response to the Board's request for references who could provide additional information, he listed several names but failed to give their addresses, occupations, or relationships. He did not respond to the Board's invitation to submit evidence beyond that contained in his Form 150. The Local Board reviewed and considered his I–O claim and sent him the following letter notifying him his claim had been denied and giving its reasons for the denial. The entire letter read as follows:

> Your claim as a conscientious objector was considered by the Board on February 12, 1971, and in their opinion your professed belief in opposition to war is not a compelling or controlling force in your life, but is simply and [sic] expedient to avoid military service at this time and that you are not sincere in your professed belief.

Defendant appealed the Local Board's decision and in June, 1971, the Appeal Board gave defendant the same classification as had the Local Board. The Appeal Board gave no reasons for its decision. All that appears in the record is a notice that as a result of "Action by the Appeal Board" the registrant was "Classified in Class 1–A . . . by the following vote: Yes 5 No 0." Defendant reported for induction and refused to take the symbolic step forward in November, 1971, resulting in the indictment in this case.

### The Prima Facie Case

It is well settled that before either the Local or Appeal Board is obligated to present its reasons for denying an applicant's claim for conscientious objector classification, the applicant must present a *prima facie* case.[2] To meet this threshold test the registrant must supply information sufficient to support two conclusions: first, that his objection to war is based upon religious training and belief, and, second, that his objection encompasses participation in war in any form.[3] The test is not a stringent one. All that is required is the presentation of facts which would justify the Board in granting conscientious objector classification, if it were to do so.[4]

The facts presented to the Board by defendant are reproduced above. Although his was far from an overwhelming presentation, it is clear that he alleged enough at least to meet the threshold *prima facie* test. The Board could have concluded from his Form 150 that his opposition to war was based on religious training and that he was opposed to war in any form. The Court finds, therefore, that he presented a *prima facie* case.

### The Stetter Requirements

It is undisputed here that *Stetter* requires at least one of the two Boards to give a statement of reasons for denying a registrant's claim for conscientious objector classification. The issues in dispute are, first, how complete and explicit that statement must be, and, second, whether the same type of state-

2. *E. g.*, United States v. Stetter, 445 F.2d 472, 476–477 (5th Cir. 1971).

3. *E. g.*, United States v. Davis, 460 F.2d 792, 796 (4th Cir. 1972).

4. *E. g.*, United States v. Jamison, 463 F. 2d 1219, 1220 (9th Cir. 1972).

ment must be presented by both boards.[5] These were issues left unclear in *Stetter,* where a registrant was denied his claim for conscientious objector classification by both the Local and Appeal Boards with neither panel giving any reasons. The Court of Appeals for the Fifth Circuit held that there was no basis in fact in the record for denying his claim and reversed his conviction. Although it could have stopped there, the Court went on to impose the following rule, which it adopted from United States v. Broyles: [6]

In any case where the board fails to disclose the basis for its decision, we risk blind endorsement of a mistake of law. Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why.[7]

Although the rule is occasionally confused with a constitutional require-

ment,[8] it is clear that it is of statutory origin.[9]

As stated in *Broyles*:

Congress has imposed upon the courts a statutory duty to review the orders of the local boards . . . . [W]e cannot discharge even this limited duty without a statement of the reasons for the board's adverse conclusion. Therefore, we must hold the local board's order invalid.[10]

And later in *Broyles*:

Implicit in the concept of a "hearing" granted by [the Selective Service] statute, and the right, albeit limited, of judicial review is the opportunity to know the issues so that these procedures are not empty gestures.[11]

In *Stetter* the Court of Appeals for the Fifth Circuit states:

Any other rule, in our view, would not only be unfair to the registrant but would result in the abdication of our responsibility of judicial review under the statute.[12]

*Stetter* and *Broyles* were both based on the Court's need to know the reasons

---

5. Since the Appeal Board's decision in this case, the Selective Service Act has been amended to require a statement of reasons from both panels:

In the event of a decision adverse to the claim of the registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision. 50 U.S.C. App. § 471a(4).

For a discussion of the new provision, see Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 1071, 31 L.Ed.2d 349 (1972). The statute offers little help in resolving the issue of how complete and explicit the statement must be, however, particularly in view of the statute's requirement of only a "statement of the reasons," as compared to the requirement in *Stetter and Broyles* for a statement of the "basis of decision and the reasons therefor." See text at note 6 *supra.*

It is interesting to note that the new statutory request for a statement from the Local Board has been added to the regulations, 32 C.F.R. § 1623.4(c) (1972),

but not the request for a statement from the Appeal Board, see *id.* §§ 1626.1–.61.

6. 423 F.2d 1299, 1304 (4th Cir. 1970).

7. United States v. Stetter, 445 F.2d 472, 482 (5th Cir. 1971). The rule has been adopted by nearly every circuit. For a listing of the cases and circuits see United States v. Edwards, 450 F.2d 49 (1st Cir. 1971).

8. *See e. g.,* Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 1067–1068, 31 L.Ed.2d 349 (1972).

9. The statutory right to judicial review is implied from the following sentence in the Selective Service Act:

No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution . . . . 50 U.S.C. App. § 460(b)(3).

10. 423 F.2d at 1303.

11. Id. at 1306.

12. 445 F.2d at 483.

upon which the administrative panel based its decision in order to protect the right to judicial review. *Stetter,* however, went beyond *Broyles* by also stressing the registrant's need to know the Board's reasons in order to protect his right to an administrative appeal.[13] "Without a statement of reasons, a registrant is unable to take advantage of his right under the regulations . . . [to appeal to] the Appeal Board."[14] This shift in emphasis from the judiciary's need for the performance of its role to the registrant's need for taking advantage of his rights to both administrative and judicial review is significant in several respects. First, since the registrant has a right under the statute to both an administrative and a judicial review, he must be informed of the agency's reasons at both the Local and Appeal Board level.[15] Second, since the scope of judicial review is extremely narrow,[16] while that of the Appeal Board review is extremely broad, the statement of reasons needed from the Local Board in order to prepare an effective administrative appeal must be more complete than that required of the Appeal Board for judicial review.[17] Third, since the registrant will usually be represented by counsel at the judicial review but not the administrative review, the statement of reasons required of the Local Board must be more explicit than what is required of the Appeal Board.

Exactly how complete and explicit the indication from each Board must be is a difficult question, and will depend to a large extent on the peculiar circumstances of each case. It is clear that something less is required of the Boards than the findings of fact and conclusions of law required of the federal district courts.[18] But it is also clear that more than a mere statement of denial is required. There are no precise guidelines.[19] Based on the above observations of the *Stetter* opinion, the following workable tests can be articulated. The test at the Local Board level, as perceived by this Court, is that the statement must permit an unrepresented registrant using reasonable diligence to understand the reasons and facts relied upon by the Local Board sufficiently to allow a meaningful administrative review. This will in all cases require a statement of the ultimate reasons upon which the Local Board relied and in addition some indication of the facts upon which it based those ultimate reasons. The test at the Appeal Board level, as perceived by this Court, is that there must be in the record some indication which will permit defense counsel and

---

13. *See* United States v. Davis, 460 F.2d 792, 800 n. 8 (4th Cir. 1972).

14. United States v. Stetter, 445 F.2d 472, 484 (5th Cir. 1971). The Selective Service Act authorizes but does not require the President to establish appeal boards within the Selective Service System. 50 U.S.C. App. § 460(b)(3). The actual right to an administrative appeal is granted by the Selective Service System regulations. Arguably, since the right to judicial review is required by the statute, while the right to administrative review is only authorized, Congress intended the administrative appeal to play a less important role. There thus may be less need to protect the administrative appeal with such procedural safeguards as the statement of reasons under dispute here. There is no basis for this distinction in *Stetter,* however.

15. *See* United States v. Davis, 460 F.2d 792 (4th Cir. 1972). *Contra,* United States v. Daniel, 462 F.2d 349, 351 (9th Cir. 1972); United States v. Kember, 437 F.2d 534 (9th Cir. 1970).

16. See, *e. g.,* United States v. Brown, 456 F.2d 983, 985–986 (5th Cir. 1972).

17. *See* United States v. Francis, 457 F.2d 553 (10th Cir. 1972), where the court noted that relatively little is required to permit it to perform its role. In that case just a general indication from the Appeal Board that it found applicant to be insincere was sufficient. *See also* United States v. Ervin, 464 F.2d 1021 (9th Cir. 1972); United States v. Carpenter, 462 F.2d 1363 (10th Cir. 1972).

18. Rule 52, Federal Rules of Civil Procedure.

19. *See, e. g.,* United States v. Stetter, 445 F.2d 472, 482–485 (5th Cir. 1971).

the Court to understand, with reasonable certainty,[20] the reasons and facts relied on by the Appeal Board sufficiently to allow meaningful judicial review.[21] This test would most easily be met by a statement similar to that required of the Local Board, but under some circumstances less may be sufficient.

### Sufficiency of the Local Board's Statement of Reasons

 The statement of reasons provided the registrant in this case is reproduced above. Although the statement is far from ideal and should not be relied on as a model for future registrants, it is the Court's opinion that under the circumstances of this case it is sufficient to meet the requirements of *Stetter*. One can, by reading between the lines, determine that the Local Board concluded the registrant was insincere in his professed opposition to war, and that it based this ultimate conclusion on two intermediate conclusions: first, that his opposition to war was not a compelling or controlling force in his life, and, second, that his claim for conscientious objector classification was brought primarily to avoid military service. These intermediate conclusions do not explicitly provide the facts upon which the Local Board based its finding of insincerity, but, coupled with a review of the record presented by the registrant, they do provide with reasonable certainty an indication of those basic facts. The conclusion that his opposition to war was not a compelling or controlling force in his life undoubtedly was based on the fact, apparent in the record, that his professed belief caused no change in life style which in any way provided an outward manifestation of his belief. The conclusion that his conscientious objector claim was brought primarily to avoid military service was undoubtedly based on the fact that he did not submit his claim for conscientious objector classification until nearly a year after his final I–A classification and three months after he received his final notification that he was fully acceptable for military service. If the registrant had interpreted the Local Board's letter in this way, he could have prepared a meaningful appeal to the Appeal Board. This interpretation is by no means crystal clear, but reading the letter in conjunction with the record presented by the applicant, it meets the above test—the registrant, even though unrepresented by counsel at this stage of the proceedings, could have determined, if he had used reasonable diligence, the reasons and facts relied on by the Local Board sufficiently to permit him a meaningful administrative appeal.[22]

### The Appeal Board's Reasons

 It is next necessary to determine whether there is an indication in the record of the Appeal Board's reasons for denying defendant's claim for conscientious objector classification.[23] As discussed above, the test to be applied is whether there is an indication in the record which will permit defense counsel and the Court to understand, with reasonable certainty, the reasons and facts

---

**20.** *See* United States v. Kember, 437 F. 2d 534 (9th Cir. 1970).

**21.** *See* United States v. Stickler, 452 F. 2d 907 (9th Cir. 1971) ; United States v. Kember, 437 F.2d 534 (9th Cir. 1970).

**22.** *See* United States v. Daniel, 462 F.2d 349 (9th Cir. 1972), finding sufficient under the *Stetter* rule a statement very similar to the one in dispute here.

**23.** It is important to note that it is the Appeal Board's decision, not the Local Board's decision, which is subjected to judicial review. United States v. Kember, 437 F.2d 534, 536 (9th Cir. 1970). The Appeal Board's function is not a traditional appellate one. It is directed to perform a *de novo* review of the registrant's claim, 32 C.F.R. § 1626.26(a) (1972), limited only by the requirement that it consider only evidence previously presented to the Local Boards, *id.* § 1626.24(b). The Appeal Board is free to rely on grounds other than those relied on by the Local Board, United States v. White, 421 F.2d 487, 490 (5th Cir. 1969), and its decision is final, 32 C.F.R. § 1626.26 (b) (1972), regardless of whether it affirms or reverses the decision of the Local Board, *see id.* §§ 1626.26–.61.

relied on by the Appeal Board sufficiently to allow meaningful judicial review. In applying this test the Court explicitly rejects the presumption, urged by the Government, that whenever the Appeal Board grants the same classification as the Local Board without comment it does so on the same grounds as the Local Board.[24] Where the Court is reviewing an administrative appellate panel which is directed to perform a *de novo* review, which has the power to rely on grounds other than those presented by the lower panel, and whose decision is final regardless of whether it affirms or reverses the lower panel,[25] such a presumption offers little assurance of presenting to the Court the true basis for the decision under review.[26]

■ The Court holds, however, that under the circumstances of this case both defendant's counsel and the Court can determine with reasonable certainty that the Appeal Board based its decision on the same reasons and facts as did the Local Board. Since we have already held that the statement of the Local Board was sufficient to permit a meaningful administrative review, that statement is also sufficient to meet the less exacting test for a meaningful judicial review. The Court bases its finding that the Appeal Board relied on the same grounds as the Local Board on the following factors present in this case. First, the statement from the Local Board is sufficient to inform the Appeal Board of its reasons for denying the claim in the first instance, so that it was not necessary for the Appeal Board to look beyond the reasons suggested by the Local Board. Second, the Local Board's reasons have strong support in the record, making it unlikely that the Appeal Board would look beyond the Local Board's reasons. Third, the reason relied on by the Local Board was obvious in this case and there are no other likely grounds which the Appeal Board might have relied on. Finally, the registrant presented a relatively simple case which presented no novel issues of law or fact making it unlikely that the Appeal Board did anything further than routinely double check the Local Board's action.

### Basis in Fact

■ Having determined that there is an indication of the reasons and facts relied on by both Boards in the record sufficient to meet the requirements of *Stetter*, it finally becomes necessary to determine whether there was a basis in fact in the record for the Appeal Board's decision denying defendant's claim for conscientious objector classification. As is apparent from the discussion above, it is clear to the Court the Appeal Board found the registrant to be insincere and based this finding on the facts that the registrant's professed belief had made no visible impact on his life style and that he applied for conscientious objector classification only after his induction into the Armed Services was imminent. These two facts are sufficient to support the finding of insincerity. We conclude,

---

24. The Government cites· in support of this presumption United States v. Buckley, 451 F.2d 594 (9th Cir. 1971), a short per curiam opinion which cited only United States v. Kember, 437 F.2d 534 ; (9th Cir. 1970). *Kember*, however, far from applying a presumption, held that "the appeal board as well as the local board [is required to] state its reasons for denial of a conscientious objector claim . . . unless the appeal board's reasons can be determined from the agency record with reasonable certainty." *Id.* at 536. We do not read *Buckley*, therefore, as laying down a hard and fast presumption to be applied in all cases where the Appeal Board chooses to remain silent.

25. *See* note 23 supra.

26. Moreover, the presumption of regularity normally accorded an administrative agency by the courts, *see* Oestereich v. Selective Service System, 393 U.S. 233, 241, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), is of no help to the Government's case here, because there would be nothing irregular in the Appeal Board relying on different grounds than did the Local Board. See note 23 *supra*.

therefore, that the Board complied with all the procedural requisites in classifying defendant I–A and that defendant is guilty of the crime of refusing induction into the armed services.