**In re Steven T. GAREY, Debtor.**

**William T. Fowler, Plaintiff,**

v.

**Steven T. Garey, Defendant.**

**Bankruptcy No. 99–14134–RGM.**
**Adversary No. 99–1334.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 29, 2000.

Robert R. Gregory, Manassas, Virginia, for debtor.

Brian T. Scher, Grayson and Associates, P.C., McLean, Virginia, for plaintiff.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

William T. Fowler filed a complaint seeking a determination that a debt owed to him by Steven T. Garey is nondischargeable. Mr. Fowler alleged that the debt owed to him by Mr. Garey was in the nature of money obtained by false pretenses, fraud or false representations, as well as in the nature of a willful and malicious injury to another.[1] Sections 523(a)(2)(A) and (a)(6) of the United States Bankruptcy Code. Mr. Fowler was represented by counsel and was present in person at trial. Mr. Garey filed a *pro se* answer and was neither present in person nor represented by counsel at trial.

### Factual Background

Mr. Fowler testified at the trial in this court that his son was driving Mr. Fowler's 1985 Buick Park Avenue on Route 29 in Fairfax County, Virginia, on April 20, 1996, when it broke down. His son telephoned him and he went to look at the car. Mr. Fowler could not get the car started and did not know what was wrong with it. Fortuitously, another motorist pulled up behind them on the shoulder, introduced himself as Steven T. Garey and told Mr. Fowler that he was an automobile mechanic. Mr. Garey handed him a flyer advertising "Garey's Car Sales and Repairs."

Mr. Garey looked under the hood of the Buick and told Mr. Fowler that the water pump needed to be replaced. He said that he could do the work and asked Mr. Fowler to have the car towed to his house where he would do the work himself. The estimate for the job was $300. Mr. Fowler had the car towed to Mr. Garey's home and, at Mr. Garey's request, paid for the repair in advance.

The following day, Mr. Garey telephoned Mr. Fowler and told him that the cam shaft was warped and that it was necessary to replace the engine. Mr. Garey offered to replace the engine himself at his father's garage in Fairfax, Virginia. The total price for the expanded repair job was $1,900. Mr. Garey requested an additional $500 which Mr. Fowler paid as a deposit for the engine. He told Mr. Fowler that the repair job would be completed by April 26, 1996.

Several days before April 26, 1996, Mr. Garey spoke with Mr. Fowler's wife and told her that the engine he had purchased was defective and that he needed to get a second engine. He asked for in additional $1,500 to purchase the second replacement engine. Although this required Mr. Fowler to pay a total of $2,300 in advance, an amount that exceeded the $1,900 repair cost, Mr. Fowler advanced the additional money because Mr. Garey promised to reimburse him for the overpayment when the defective replacement engine was exchanged for its replacement.

On April 26, 1996, Mr. Fowler learned that Mr. Garey had not performed any repairs and had not taken the car to his father's auto repair shop, but to Hamaways and Lee Auto. On April 30, 1996, Mr. Garey again telephoned Mr. Fowler and requested an additional $600 to have the repairs completed. Mr. Garey represented that this was a downpayment that Hamaways and Lee Auto required to do the work. Mr. Fowler reluctantly advanced the additional $600 to Mr. Garey

---

1. In light of the ruling on the § 523(a)(2)(A) count, it is unnecessary to address the § 523(a)(6) count.

bringing the total advanced to $2,900. Mr. Fowler still expected to be reimbursed the $1,000 overpayment from the reimbursement Mr. Garey expected from the return of the first replacement engine. The work was estimated by Mr. Garey to be completed by May 3 or May 4, 1996.

About May 13, 1996, Mr. Fowler telephoned Hamaways and Lee Auto to find out what the status was on the completion of the work. He was told that the work was completed and that the balance due was $1,301.06. After additional unfulfilled promises by Mr. Garey to pay the balance to the garage, Mr. Fowler ultimately paid the garage the balance of $1,301.06.

### Procedural History

Mr. Fowler filed a Motion for Judgment and Petition in Detinue in the Circuit Court of Fairfax County, Virginia on May 17, 1996. The Motion for Judgment contained four counts: false pretenses and fraud; conversion; breach of contract; and violation of the Virginia Consumer Protection Act, Code of Virginia § 59.1–196 *et seq.* On November 1, 1996, the Circuit Court entered an order sanctioning Mr. Garey for his failure to appear at a deposition by finding him liable on all four counts in the Motion for Judgment. On January 6, 1997, a final order was entered granting judgment against Mr. Garey in the amount of $16,353.18 representing treble compensatory damages under § 59.1–204 of the Code of Virginia as a willful violation of the Virginia Consumer Protection Act together with interest from June 1, 1996, costs and attorney's fees in the amount of $12,593.50

Mr. Garey filed a voluntary petition in bankruptcy pursuant to chapter 7 of the United States Bankruptcy Code in this court on August 12, 1999. This adversary proceeding was timely filed on December 16, 1999. Mr. Garey filed a *pro se* answer disputing Mr. Fowler's claim of fraud and alleging that the amount he charged Mr. Fowler for repairs was justified. A motion for judgment on the pleadings was denied.

The answer, although sketchy, was sufficient to join issue on the complaint. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (*pro se* pleadings are held to less stringent standards than those prepared by attorneys).

Mr. Fowler later filed a Motion for Summary Judgment which was never noticed for a hearing. The Motion was supported by the Declaration of Mr. Fowler which incorporated several exhibits. Mr. Garey did not respond to the Motion for Summary Judgment. At the beginning of the trial, Mr. Fowler orally presented his Motion for Summary Judgment and the court heard the testimony of Mr. and Mrs. Fowler. Mr. Garey was not present in person or by counsel.

### Discussion

#### Motion for Summary Judgment

■ The motion for summary judgment must be denied. Mr. Garey did not file any affidavits or other evidence in support of his defenses or to stave off summary judgment. However, the notice required by *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975) was not given. *Roseboro* prohibits the entry of summary judgment based on a *pro se* party's failure to submit affidavits supporting his allegations unless the *pro se* party has been given a reasonable opportunity to file counter-affidavits or other appropriate materials and is informed that failure to file such a response may result in dismissal of the action. *See Roseboro,* 528 F.2d at 310. *See also* United States District Court for the Eastern District of Virginia Local Rule 7(J). Moreover, no notice that the motion would be heard was given to the defendant.

#### Underlying State Law Claim

■ In order for a plaintiff to prevail on a state law fraud action in Virginia he must prove six elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent

to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). The unrebutted testimony of Mr. and Mrs. Fowler at the trial properly established the requisite elements. In addition, the facts proven also establish multiple violations of the Virginia Consumer Protection Act. The evidence establishes that Mr. Garey misrepresented the services to be provided as his own when in fact the engine replacement was performed by Hamaways and Lee Auto. Code of Virginia § 59.1–200(A)(1). The evidence also establishes that Mr. Garey used deception, fraud, false pretenses, false promises and misrepresentations in connection with the transaction, all in violation of § 59.1–200(A)(14) of the Virginia Consumer Protection Act. The violations of the Act were willful. The plaintiff is, therefore, entitled to treble damages and his reasonable attorney's fees and courts costs. Code of Virginia § 59.1–204.

### Determination of Dischargeability

■ Section 523(a)(2)(A) of the United States Bankruptcy Code excepts from discharge any debt "for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Most courts agree that the traditional elements of an action for fraud must be established to prevail on a claim of nondischargeability under § 523(a)(2)(A). For a plaintiff to prevail, he must prove that the debtor made a representation: the debtor knew the representation was false at the time the representation was made; the debtor made the false representation with the intention of deceiving the creditor; the creditor justifiably relied on the representation; and the creditor sustained the alleged loss and damage as the proximate result of the false representation. *Parker v. Grant (In re Grant)*, 237 B.R. 97, 112 (Bankr.E.D.Va.1999). Justifiable reliance permits Mr. Fowler to rely on Mr. Garey's statements without further investigation.

The statements appeared on their face to be true. There were no circumstances that indicated that they were false or fraudulent. Mr. Fowler discovered that they were false only after he had parted with his money and had no reason to know of their falsity earlier. Here, the plaintiff met his burden by the preponderance of the evidence for purposes of dischargeability as to the fraud and the two violations of the Virginia Consumer Protection Act.

### Damages

■ Mr. Fowler testified that he paid a total of $4,201.06 to both Mr. Garey and the garage. Mr. Garey received $2,900 and Hamaways and Lee Auto received $1,301.06. The agreed upon cost of the repair was $1,900. Mr. Fowler's actual damages were $2,301.06, the difference between what he actually paid and what he had agreed to pay. There was no evidence that the repair finally completed by Hamaways and Lee Auto was in any way unsatisfactory. Under the Virginia Consumer Protection Act, the actual damages may be trebled to $6,903.18, a penalty that in this case is fully warranted. All damages, including attorney's fees provided by statute, are non-dischargeable. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (Treble damages arising from violation of New Jersey Consumer Fraud Act are nondischargeable.)

### Attorney's Fees

Section 59.1–204 of the Virginia Consumer Protection Act also permits a plaintiff to recover reasonable attorney's fees and court costs. Counsel for Mr. Fowler requested $31,057.00 for 214.9 hours of legal work and $2,253.52 for costs and disbursements. The request is documented by counsel's Declaration and time records. The Court reviewed the Declaration and time records.

■ The operative provision in § 59.1–204(B) is "reasonable." The Virginia Supreme Court has articulated the standard

to determine reasonableness of requested attorney's fees. *Chawla v. BurgerBusters, Inc.,* 255 Va. 616, 499 S.E.2d 829 (1998); *Seyfarth, Shaw v. Lake Fairfax Seven Ltd. Partnership,* 253 Va. 93, 480 S.E.2d 471 (1997). In *Seyfarth, Shaw,* the Virginia Supreme Court stated:

> In determining whether a party has established a prima facie case of reasonableness, a fact finder may consider, inter alia, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

*Id.* at 97, 480 S.E.2d at 473. These factors are similar to those used by federal courts. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) (the reasonableness of attorney's fees is to be determined by application of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.); Alexander S. v. Boyd,* 113 F.3d 1373, 1390–91 (4th Cir.1997) *cert. denied,* 522 U.S. 1090, 118 S.Ct. 880, 139 L.Ed.2d 869 (1998).

 The fees sought in this case do not meet the standard set in *Chawla.* One factor is the value of the services to the client. In this case, the value of the services to the client is the amount of the recovery. The evidence reflects that only $2,301.06 was in issue.[2] It is not reasonable to incur legal fees thirteen times greater than the amount in controversy

absent extenuating circumstances. There were no such circumstances here. The defendant lost by default in the state court and did nothing in this proceeding except file an answer. While he was not cooperative, he did not engage in aggressive or disruptive behavior. He did not magnify the complexity of the case. This was a simple collection case that should have been brought in the first instance in the General District Court, not the Circuit Court. Significant effort could have been avoided and time saved had this matter started as a General District Court case. Here, counsel incurred $5,906.50 in fees to draft the initial complaint, to amend the complaint and move the admission *pro hac vice* of counsel. This itself exceeded the amount in controversy. Preparing discovery and obtaining a sanctions order cost $3,897.00 even though it does not appear that the defendant responded to or contested any of the discovery sought. Liability in the Circuit Court was established as a sanction for failure to attend a deposition. The total bill for legal services through the judgment in the Circuit Court was $12,593.00. Expenses and court costs, which included postage, local transportation and copying were $207.76.

Counsel then spent the next two and a half years trying to collect the judgment apparently without success. This included trying to locate the defendant. For example, counsel spent 3.8 hours on one day for services described as "Attempted to trace location." The Fifth Circuit in *Johnson* addressed the factor of time and labor required. It said:

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which

---

**2.** The original Motion for Judgment also added Hamaways and Lee Auto as a defendant and sought recovery of the Buick without payment of the $1,301.06. This relief was apparently denied. Mr. Fowler recovered the vehicle but only after paying Hamaways and Lee Auto the sum due to it. While this had the effect of increasing the amount in controversy by the value of the vehicle and in-

creased the complexity of the case, it was unavailing. A mechanic retains a lien on a vehicle and may retain the vehicle until paid. Counsel further complicated the case by asserting that Hamaways and Lee Auto was not entitled to claim a mechanic's lien because the vehicle had been delivered to them by Mr. Garey, not Mr. Fowler, the owner of the vehicle. Code of Virginia § 43–33.

can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

*Id.* at 717. Skip tracing does not require a law degree. The total legal fee for this period was $7,496.00. The expenses and court costs were $1,166.66.

Finally, the legal fees in this court were $10,967.50. The expenses and court costs were $879.10. In this court, counsel prepared the complaint, obtained service, prepared a motion for judgment on the pleadings, a motion for summary judgment (that was never noticed for a hearing), attended the pre-trial conference and presented what was essentially an *ex parte* hearing on liability and damages. The Fifth Circuit in *Johnson* also stated:

> Although hours claimed or spent on a case should not be the sole basis for determining a fee, ... they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities.

*Id.* at 717. Here, the end product was not commensurate with the time expended. It could have been done much quicker. While lawyers unfamiliar with particular proceedings need to become educated with new areas, they cannot charge the entire cost of their education to their client or as here, to the losing party. Moreover, the state court suit was a very basic action that did not require any particular expertise. The adversary proceeding in this court was also very basic.

 An award of attorney's fees is not intended to be additional punitive damages awarded against the losing party. The measure of damages in this case is the actual loss occasioned and the additional award in the form of treble damages. Counsel fees are intended to reimburse the plaintiff his reasonable expenses. They are not, as the Fifth Circuit noted, "to make the prevailing counsel rich." *Id.* at 719. The award of attorney's fees is not "for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of ... litigation." *Id.* at 719–20.

When measured against the standards established by the Virginia Supreme Court, the requested fees are simply unreasonable. The court after considering the factors enunciated by the Virginia Supreme Court and the entire record finds that $5.000.00 is a reasonable attorney's fee. Costs and expenses in the amount of $2,254.41 will also be awarded.

### Collateral Estoppel

 Mr. Fowler argued that the judgment recovered in the Circuit Court for Fairfax County should be given collateral estoppel effect. The burden is on the party seeking to use another judgment to prove the elements of collateral estoppel. *United States v. Davis,* 460 F.2d 792, 796 (4th Cir.1972); *In re Professional Coatings (N.A.), Inc.,* 210 B.R. 66, 80 (Bankr. E.D.Va.1997); *C & M Investments, L.L.C. v. Jones (In re Jones),* 209 B.R. 380, 383–84 (Bankr.E.D.Va.1997). Here, there was no evidence presented as to the prior judgment except for the motion for judgment and the two orders. One of the elements that must be shown is that the issues were actually litigated. *In re Genesys Data Technologies, Inc.,* 204 F.3d 124 (4th Cir. 2000); *TransDulles Center, Inc. v. Sharma,* 252 Va. 20, 22–23, 472 S.E.2d 274, 275 (1996). Here there was no evidence that the issues were actually litigated. Consequently, collateral estoppel is not available.

### Relief Granted

Inasmuch as there is an existing judgment in the Circuit Court for Fairfax County, this court will declare that the Circuit Court judgment is not discharged

to the extent of $6,903.18 which represents three times the actual damages and counsel fees and expenses in the amount of $7,254.41. These amounts will bear interest at the rate and from the time set forth in the judgment order. The Circuit Court judgment may not be enforced and is discharged in all amounts in excess of these amounts.